908 F.2d 974
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia TROY, Kevin Boston, Plaintiffs-Appellants,
v.
SUBURBAN MANAGEMENT CORP., et al., Defendants-Appellees.
 No. 89-1282.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and DAVID D. DOWD Jr.,* District Judge.
 DOWD, Judge.
 
 
 1
 Plaintiffs Patricia Troy ("Troy") and Kevin Boston ("Boston") appeal from the district court's grant of summary judgment against them on their allegations of housing discrimination on the basis of race against Suburban Management Corporation ("Suburban") and Mary Licak ("Licak"). Plaintiffs allege that the defendants' discriminatory housing practices violated various laws of the United States and the State of Michigan.[1] The district court denied plaintiffs' motion for a preliminary injunction following a hearing. Subsequently, defendants moved for summary judgment which was granted by Memorandum Opinion and Judgment Entry filed January 4, 1989. While the district court concluded that the plaintiffs had made out a prima facie case of discrimination under the Fair Housing Act, it ultimately determined that there were "absolutely no facts to suggest that the termination of [Troy's] tenancy was racially motivated." Joint Appendix, p. 53. On appeal, plaintiffs assert that summary judgment was inappropriately granted because there exists a genuine issue of material fact as to the pretextual nature of defendants' articulated business reason for the termination of Troy's tenancy. For the reasons that follow, the district court's grant of summary judgment in favor of defendants is affirmed.
 
 I.
 
 2
 During the time of the events in question, defendant Suburban was under a contract to manage the Stanford Townhouses in Southfield, Michigan.[2] Defendant Mary Licak was hired in June, 1987 by Suburban to rent the apartments and attend to various office duties. Her supervisor was Suburban's office manager, Dori Alexander. Mary Licak's role in the renting of apartments at Stanford Townhouses included accepting completed applications from prospective tenants and forwarding them to Suburban's main office. The rental applications contained no reference to race or ethnicity. All decisions on rental applications were made by Suburban's main office without knowledge of the race or ethnicity of the applicant. Persons of different racial and ethnic backgrounds, as well as an interracial couple, comprised the residents of Stanford Townhouses. Similar to the procedure for approving prospective tenants, all decisions regarding termination of tenancies were made by Suburban. One basis for a decision on the part of Suburban to terminate a tenancy was activity on the part of a tenant which disturbs other tenants in the peaceful use of their property.
 
 
 3
 Plaintiff Troy is a white woman who had a six month lease with Stanford Townhouses from October, 1986 to March, 1987. After the expiration of her lease, she continued on at Stanford Townhouses as a holdover tenant on a month-to-month basis.
 
 
 4
 Plaintiff Boston, a black man, was a former employee of Suburban hired as a maintenance worker at Stanford Townhouses beginning May 18, 1987. After Boston was hired and because of problems with inadequate maintenance, Suburban hired Eugene Licak as a maintenance supervisor at Stanford Townhouses. Boston allegedly became upset that someone was hired to supervise him and quit his employ with Suburban on June 15, 1987.
 
 
 5
 Notwithstanding the termination of his employment, Boston continued to frequent Stanford Townhouses because of his ongoing relationship with Troy, which began in January, 1986. Boston frequently visited Troy at her residence in Suburban Townhouses. Additionally, he was an overnight guest of Troy's from time to time and he received his paychecks there during the time he was employed at Stanford Townhouses. However, only Troy's name was on the lease and there was testimony at the preliminary injunction hearing that Boston maintained his own residence and did not live with Troy.[3]
 
 
 6
 A number of residents complained to Dori Alexander and Mary Licak regarding Boston's violations of the rules and regulations of Stanford Townhouses relating to parking in fire lanes, repair of vehicles on the premises and speed in the parking lot. William Hasten, a resident at Stanford Townhouses, testified at the preliminary injunction hearing. According to Mr. Hasten, he was almost run over while out jogging in the early morning hours by Boston as he was speeding through the Stanford Townhouses' parking lot on the wrong side of the road. Mr. Hasten also personally observed Boston performing brake and muffler work on two different cars in the Stanford Townhouses' parking lot. He reported these incidents to Eugene and Mary Licak. Boston's various rules violations were also personally observed by Eugene and Mary Licak.
 
 
 7
 Apparently, however, Boston was not the only person who violated the various regulations at Stanford Townhouses regarding parking and the repair of vehicles in the parking lot. When other persons at Stanford Townhouses were observed to be in violation of the rules and regulations, their violations were brought to their attention either verbally or by written memorandum from Mary Licak. However, according to Licak, Boston's rules violations were never brought to his or Troy's attention because of the tension that existed between Boston and Suburban and Eugene Licak as a result of the previous employment relationship between them. Licak was instructed by Suburban not to approach Troy or Boston regarding Boston's rules violations in order not to "aggravate him." Further, defendant Licak observed that as a former employee, Boston was well aware of the rules and regulations governing the residents and guests of Stanford Townhouses.
 
 
 8
 Dori Alexander communicated to Martin Leshman, managing partner of Suburban, the complaints from tenants she had received personally and through Mary Licak regarding Boston's conduct on the premises of Stanford Townhouses. She was instructed by Mr. Leshman to issue a Notice to Quit on the tenancy of Troy upon payment of the last month's rent. Pursuant to directions from Dori Alexander, on August 4, 1987 Mary Licak served on Troy a Notice to Quit her month-to-month tenancy at Stanford Townhouses.[4] The reason articulated by defendants for the termination of Troy's tenancy was that Boston's frequent parking and moving violations created an annoying and unsafe situation for the other residents.
 
 
 9
 When plaintiffs failed to vacate the premises, Suburban pursued an eviction order which was issued on December 7, 1987 and required the premises to be vacated by January 4, 1988. Plaintiffs sought a preliminary injunction in the court below which was denied after a hearing, and they were evicted on February 1, 1988.
 
 
 10
 It is the position of the plaintiffs that Suburban discriminated against them on the basis of race by terminating Troy's tenancy because of the interracial relationship between herself and Boston. It is the defendants' position that Troy's tenancy was terminated because her relationship with Boston caused him to frequent the premises and that the only way to eliminate his presence was to terminate her tenancy. According to Suburban, it sought to eliminate Boston's presence from the premises of Stanford Townhouses because of his continual rules violations and race played no part in its decision. While plaintiffs admit that Boston violated certain of Stanford Townhouses' regulations, they argue that rules violations by other residents and guests present an issue of material fact as to whether defendants' articulated business reason for the termination is pretextual.
 
 II.
 
 11
 It is well established that when considering a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." U.S. v. Diebold, 369 U.S. 654, 655 (1962); United States v. Hodges X-Ray, Inc., 759 F.2d 557 (6th Cir.1985); Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir.1974); Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425 (6th Cir.1962). However, the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e). The "adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his] response, by affidavits or otherwise ..., must set forth specific facts showing there is a genuine issue for trial. If [he] does not so respond, summary judgment, if appropriate, shall be entered against [him]." Fed.R.Civ.P. 56(e).
 
 
 12
 A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). Therefore, "[i]f the evidence is merely colorable, ..., or is not significantly probative, summary judgment may be granted." Id. at 249-250 (citing Dombrowski v. Eastland, 387 U.S. 82 (1967) (per curiam ); First National Bank of Arizona v. Cities Service Co., 391 U.S. at 290). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir.1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252). Moreover, summary judgment is appropriate when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 13
 In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.
 
 III.
 
 14
 Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act"), 42 U.S.C. Sec. 3601 et seq., makes it unlawful to refuse to rent or otherwise deny housing to any person on account of race. Section 3604 provides in relevant part:
 
 
 15
 [I]t shall be unlawful--
 
 
 16
 (a) To refuse to ... rent after the making of a bona fide offer, or to refuse to negotiate for the ... rental of, or to otherwise make unavailable or deny, a dwelling to any person because of race ...
 
 
 17
 42 U.S.C. Sec. 3604(a).
 
 
 18
 A violation of the Fair Housing Act can be established by a showing of discriminatory intent or discriminatory effect. See Arthur v. City of Toledo, Ohio, 782 F.2d 565, 574 (6th Cir.1986) (citing Metropolitan Housing Development Corp. v. Village of Arlington Heights, 558 F.2d 1283, 1290 (7th Cir.1977), cert. denied, 434 U.S. 1025 (1978)). In the instant case, plaintiffs allege that defendants intentionally discriminated against them on the basis of race in violation of the Fair Housing Act. In order to prove their case, plaintiffs need not establish that race was the sole factor in the defendants' decision to terminate Troy's tenancy. Rather, it is sufficient to establish liability if race was an effective reason, if not the sole factor, in the defendants' decision to terminate. See Green v. Century 21, 740 F.2d 460, 464 (6th Cir.1984).
 
 
 19
 The familiar three-part burden of proof test for Title VII employment discrimination cases articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), has been widely applied to Title VIII claims as well. Selden Apartments v. U.S. Dept. of Housing & Urban Develop., 785 F.2d 152, 159 (6th Cir.1986); Shaw v. Cassar, 558 F.Supp. 303, 312 (E.D.Mich.1983) (citing Harper v. Hutton, 594 F.2d 1091 (6th Cir.1979)).
 
 
 20
 In order to establish a prima facie case of housing discrimination based upon race under the McDonnell Douglas test, plaintiffs must show that:
 
 
 21
 1. they are members of a racial minority[5];
 
 
 22
 2. an apartment was rented from the defendant;
 
 
 23
 3. their tenancy at that apartment was terminated;
 
 
 24
 4. the apartment continued to be available.
 
 
 25
 The district court found and the parties do not dispute that the plaintiffs have established a prima facie case of race discrimination under the Fair Housing Act.
 
 
 26
 Once the plaintiffs have established a prima facie case, the burden of production shifts to the defendants to articulate a legitimate, non-racial reason for their decision to terminate Troy's tenancy. In this case, Suburban contends that it was Boston's regular violations of Stanford Townhouses' rules and regulations which presented an unsafe and annoying situation to the other residents during his frequent visits to Troy that served as the basis for the decision to terminate Troy's tenancy.
 
 
 27
 Once the defendants articulate a legitimate, non-discriminatory reason for the action complained of, the burden then shifts back to the plaintiffs to establish that defendants' articulated reason is pretextual. In this case, plaintiffs argue that there is a genuine issue of material fact as to whether Suburban terminated her tenancy because of her interracial relationship with Boston as opposed to Boston's rules violations. The basis of plaintiffs' argument is that other tenants and guests of Stanford Townhouses were in violation of the same rules as Boston and that Eugene Licak had been heard to refer to Troy and Boston as "the girl and the black man."
 
 
 28
 The panel is not persuaded by plaintiffs' argument that there is a genuine issue of material fact as to the pretextual nature of defendants' articulated reason for the termination of Troy's tenancy. The relationship between Troy and Boston resulted in his frequent presence at Stanford Townhouses and the only way to eliminate his presence was to eliminate hers. There is no dispute that Boston did engage in repeated violations of Stanford Townhouses' rules and regulations. Further, a significant tension existed between Boston and Suburban and Eugene Licak because of the circumstances surrounding the termination of Boston's employment with Suburban. It is additionally undisputed that the residents of Stanford Townhouses covered a broad spectrum of races and ethnic backgrounds and that an interracial couple resided there as well.
 
 
 29
 While other tenants of Stanford Townhouses may have engaged in rules violations, Suburban's dim view of such infractions was undoubtedly exacerbated in the case of Boston because of the difficult situation created by the frequent presence of a disgruntled former employee on the premises. The only evidence from which racial animus could even remotely be construed is Eugene Licak's reference to Troy and Boston as "the girl and the black man." However, the panel observes that this comment was allegedly made by a man who undisputedly played no part in Suburban's decision to terminate Troy's tenancy. Therefore, in light of the racial and ethnic composition of the residents at Stanford Townhouses, Eugene Licak's lack of any authority to terminate Troy's tenancy, Boston's undisputed rules violations and the tension between Suburban and Boston because of their previous employment relationship, we conclude that there is not more than a mere scintilla of evidence that Suburban's articulated reason for the termination of Troy's tenancy is pretextual.[6] Street v. J.C. Bradford & Co., supra.
 
 
 30
 Further, the panel observes that plaintiffs' failure to carry their burden under Rule 56(e) of the Federal Rules of Civil Procedure with respect to their claim under the Fair Housing Act necessarily results in the conclusion that they are also unable to carry that burden with respect to their other causes of action which arise out of the same facts and circumstances as the fair housing claim. Accordingly, the district court's grant of summary judgment in favor of defendants is AFFIRMED.
 
 
 
 *
 The Honorable DAVID D. DOWD, JR., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 According to plaintiffs' Complaint, their action is brought pursuant to 42 U.S.C. Sec. 3604 (Fair Housing Act of 1968); 42 U.S.C. Sec. 1981, 42 U.S.C. Sec. 1982, 42 U.S.C. Sec. 1985(3), 42 U.S.C. Sec. 1986; United States Constitution, Amendment Thirteen; M.C.L.A. Sec. 37.2502; M.C.L.A. Sec. 37.2701; and 28 U.S.C. Secs. 2201 and 2202. Joint Appendix, pp. 7-8
 
 
 [2]
 While it is unclear from the record who the owner of Stanford Townhouses is, Suburban was apparently not the owner but was simply hired to manage the property
 
 
 [3]
 In light of the fact that Boston was not a named party in the lease at issue nor maintained his residence at Stanford Townhouses, we question Boston's standing in this case. However, we find it unnecessary to address this issue in light of the ultimate disposition of this case
 
 
 [4]
 The day before she received the Notice to Quit, Troy received her rent check back from Mary Licak on the grounds that Troy's account did not contain sufficient funds to cover the check. An inquiry by Troy at her bank revealed that the check had never been presented to the bank. Troy then procured a money order for payment of her rent, which was accepted
 
 
 [5]
 While Troy herself is not a member of a racial minority, her allegation that her tenancy was terminated on account of her association with a black man is sufficient to state a cause of action under Title VIII. See Parr v. Woodmen of the World Life Ins. Co. 791 F.2d 888, 891-92 (11th Cir.1986) ("Where a plaintiff claims discrimination [in a Title VII action] based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of his race." (Emphasis in original)); see also Stewart v. Furton, 774 F.2d 706 (6th Cir.1985)
 
 
 [6]
 Before the district court ruled on the defendants' motion for summary judgment in this case, a hearing on plaintiffs' motion for a preliminary injunction hearing was conducted at which the district court had the benefit of the live testimony of the principal players. While recognizing that findings of fact are prohibited in the disposition of motions for summary judgment, this panel is of the view that where the district court has had the advantage of looking the principal witnesses in the eye and viewing their demeanor in a context outside of summary judgment, those credibility determinations weigh in the balance in this Court's assessment of whether the proof offered by plaintiffs constitutes more than a scintilla of evidence necessary to carry their burden under Rule 56(e)