Carol **ALOQAILI**, et al., **Plaintiffs,**

v.

**NATIONAL HOUSING CORP.**, f/k/a
**Showe Realty Company,** et al.,
**Defendants.**

**Civ. No. 3:89CV7090.**

United States District Court,
N.D. Ohio, W.D.

April 20, 1990.

Steve Dane, Toledo, Ohio, for plaintiffs.

Ted Rowen, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

JOHN W. POTTER, District Judge.

This cause is before the Court on defendants' motion for summary judgment, plaintiffs' opposition, and defendants' reply. This is a housing discrimination case. Plaintiffs claim that defendants discriminated against them in the terms, conditions, and privileges of rental and in the provision of services or facilities in connection with their rental unit. The basis for this discrimination, plaintiffs allege, is their religion (Islamic), the national origin, race, ancestry, or ethnic characteristics of plaintiff Carol Aloqaili's husband (Arab/Palestinian Israeli), and/or their own race, ancestry, or ethnic characteristics (Arab/Palestinian Israeli). In counts one through four, plaintiffs allege violations of the Fair Housing Act, 42 U.S.C. §§ 3601–3619 (1977); 42 U.S.C. § 1981 (1981); 42 U.S.C. § 1982 (1981); and, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1981) *et seq.* (Title VI) respectively. In the fifth count, plaintiffs allege violations of Ohio Revised Code § 4112.02(H), (I), and (J). Finally, in counts six and seven, plaintiffs allege that defendants committed state common law torts of intentional and negligent infliction of emotional distress. On one prior occasion, this Court examined the claims asserted in this complaint. In a Memorandum And Order filed September 19, 1989, this Court denied defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Defendants' instant motion asks this Court to grant summary judgment in their favor on all seven counts in the complaint. Once again, however, this Court is persuaded that defendants' motion must be denied in its entirety since genuine issues of material fact are apparent.

This Court's examination of the instant motion must begin with an examination of whether plaintiffs have standing to bring suit under 42 U.S.C. §§ 1981, 1982, and 2000d. In the September 19, 1989 opinion, this Court painstakingly examined each cause of action and determined that plaintiffs did have standing to bring this lawsuit. Defendants once again attack the standing of all three plaintiffs by alleging that the deposition testimony and other documents demonstrate that this Court's initial determination of the standing issue was wrong. The defendants' arguments are not persuasive.

Defendants' current attack on the standing of plaintiff Carol Aloqaili is based on two arguments. First, defendants argue that the divorce decree granted to Carol and Akram Aloqaili April 13, 1989 robs Ms. Aloqaili of standing to pursue her claims. Second, defendants point to the deposition testimony of Carol Aloqaili to the effect that Akram Aloqaili stopped residing at Findlay Green Apartments prior to May, 1988. From this, defendants argue that any discrimination which Ms. Aloqaili may have suffered cannot be attributed to her relationship with Akram Aloqaili.

■ While noting in our earlier opinion that we were unclear as to whether plaintiff Carol Aloqaili continued to be married to Akram Aloqaili, this Court was aware

that a Decree of Dissolution of Marriage had been filed. See Memorandum and Order, September 19, 1989, at p. 2. n. 1. Defendants have offered this Court no authority for the proposition that a divorce decree, granted subsequent to the acts which form the basis for a housing discrimination claim, robs the plaintiff of standing to pursue the claim. Indeed, this Court finds such an argument to be contrary to the very purpose of the statutes involved. This argument would, in effect, give a windfall to a defendant who discriminated against the family of someone within the protected class when that family is subsequently broken apart by a divorce decree. In the absence of controlling precedent, this Court will not be the first to create such a windfall. As for defendants' second argument, this Court previously stated that "[p]laintiffs, by asserting that they were discriminated against because of their family relationship with an ethnic Arab, have stated a cause of action under § 1981." Memorandum and Order, Sept. 19, 1989 at 3 (emphasis added). Since it was the relationship Ms. Aloqaili had with a member of the protected class at the time of the incidents giving rise to the lawsuit which forms the basis for her standing, this Court finds defendants' proof of non-cohabitation to be a fact without consequence.

Defendants also allege that the plaintiff children lack standing to pursue their claims since "the record now developed establishes there is no evidence to support [a claim of distinct and palpable injury]." Defendants' Memorandum in Support of Its Motion for Summary Judgment at 43. Defendants are correct in pointing out that there are two allegedly discriminatory incidents involving the children. The Court is satisfied that there is a genuine issue of material fact regarding the defendants' motivation for prohibiting the children from playing on the grass and prohibiting the children from having a wading pool. Therefore, this Court finds that all plaintiffs have standing to pursue their claims of discrimination under the respective federal and state laws.

Having found that plaintiffs have standing to assert their claims of discrimination and emotional distress, this Court will turn its attention to the other grounds for summary judgment. This Court applies the following standard in resolving motions for summary judgment:

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* [477 U.S. 242], 106 S.Ct. 2505, 2512 [91 L.Ed.2d 202] (1986). . . . In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* [475 U.S. 574], 106 S.Ct. 1348, 1356–57 [89 L.Ed.2d 538] (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] (1962)).

*Ralph Shrader, Inc. v. Diamond International Corp.,* 833 F.2d 1210, 1213 (6th Cir. 1987).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry of summary judgment. *Id.* A moving party may discharge its burden "by 'showing' —that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 324–325, 106 S.Ct. at 2553–54. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. "[P]laintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257, 106 S.Ct. at 2514.

As mentioned above, plaintiffs have pled causes of action under four different federal statutes. Our examination begins with the Fair Housing Act, 42 U.S.C. §§ 3601–3619 (1977). 42 U.S.C. § 3604(b) provides:

> As made applicable by section 3603 of this Title and except as exempted by sections 3603(b) and 3607 of this Title, it shall be unlawful—
>
> > (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

■ The first issue this Court must resolve pertains to the evidentiary burden applicable to plaintiffs' case.[1] Defendants urge this Court to examine the Fair Housing claim under the framework announced by the United States Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In response, plaintiffs claim that an examination under the *McDonnell Douglas* test is unnecessary due to the direct evidence of discrimination which plaintiffs claim exists in this case. While defendants cite a number of cases which support the proposition that a Fair Housing claim may be properly

analyzed under the *McDonnell Douglas* framework, plaintiffs have not cited any authority for the idea that the direct evidence analysis is applicable to a Fair Housing claim.[2] In their reply memorandum in support of summary judgment, defendants argue that the evidence adduced by plaintiffs does not rise to the level of direct evidence, but defendants do not quarrel with plaintiffs' assertion that the direct evidence analysis applies to a Fair Housing claim. Therefore, defendants appear to concede that a Fair Housing claim may be properly analyzed under the direct evidence analysis.

As in *Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184 (7th Cir.1982), this case presents a situation where plaintiffs complain of discriminatory intent, not of facially neutral actions that harmed residents in plaintiffs protected class more than other residents. In *Blalock v. Metals Trades, Inc.,* 775 F.2d 703 (6th Cir.1985), *cert. denied,* —— U.S. ——, 109 S.Ct. 2062, 104 L.Ed.2d 627 (1989), our Circuit said that "[d]irect evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." *Blalock,* 775 F.2d at 707. *Blalock* was an action where plaintiff alleged religious discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Although a different statute is involved in the case *sub judice,* two factors convince this Court that the direct evidence analysis may be properly applied in this Fair Housing claim. First, the crucial issue in *Blalock,* defendants' intent, is identical to the issue in this claim. Second, the wording of the

---

**1.** Speaking for the plurality, Justice Brennan said in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (plurality opinion) (1989):

> Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a "pretext" case or a "mixed motives" case from the beginning in the District Court; .... At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives.

*Price Waterhouse,* 109 S.Ct. at 1789 n. 12. Since this issue has been briefed by counsel and since

it might aid counsel in preparing this case for trial, the Court chooses to address this issue now.

**2.** While the Court in *Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184 (7th Cir.1982) mentioned the term "direct evidence", it specifically required the plaintiffs in that case to make a *prima facia* showing of discrimination under an adapted version of the *McDonnell Douglas* framework.

two statutes involved is similar. Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a) (1981). Both the Fair Housing Act and Title VII are concerned with whether a particular defendant committed the proscribed activity *because of* the plaintiff's race, color, religion, sex, or national origin. Therefore, this Court finds that the direct evidence analysis is a proper path which may be taken to resolve the ultimate issue of defendants' intent.

Having decided that the direct evidence approach is a proper framework for analyzing plaintiffs' Fair Housing claim, this Court must now decide whether the facts surrounding this claim rise to the level of being called direct evidence. Plaintiffs point to two incidents as being direct evidence of discrimination. The first incident involves a colloquy between Ms. Aloqaili and Deborah Overton during the time Ms. Overton was a manager of Findlay Green Apartments. During this colloquy, plaintiffs allege that Ms. Overton told Ms. Aloqaili not to use the back door to the laundry room. Plaintiffs further allege that when Ms. Aloqaili asked for a reason, Ms. Overton said "there's been other complaints also but—and in specific, the way you dress and the way you look, you act." Carol Aloqaili Dep. at 80. Ms. Aloqaili's deposition also reveals the following:

> [Ms. Aloqaili]. In the first incident of the door to the front building when Deb Overton came to me and said, you know, people are concerned about you, the way you dress, the way you look and what your husband is. Is he Arabic and where he's from.
>
> [Mr. Rowen]. Okay. So what you're adding new to that is what your husband is and where he's from, is that correct?
>
> [Ms. Aloqaili]. Correct.

[Mr. Rowen]. And it would be about the same time frame that you gave us before?

[Ms. Aloqaili]. Correct.

Carol Aloqaili Dep. at 131.

The second incident which plaintiffs claim is direct evidence of discrimination involves a colloquy between Ms. Aloqaili and Charles Bowser, another manager of the Findlay Green Apartments. Plaintiffs allege that when Mr. Bowser performed an inspection of an apartment which Carol Aloqaili vacated, he prepared an unfair inspection report and threatened to evict Ms. Aloqaili if she did not immediately pay damages of $400.00. When Ms. Aloqaili disagreed, plaintiffs allege that Mr. Bowser said "fine, if you don't like it here, I suggest you go back to your country. If you don't like it here, just get out of this country." Carol Aloqaili Dep. at 139.

The parties have not pointed to, nor has this Court through independent research found, a litmus test for deciding what evidence constitutes direct evidence and what evidence constitutes mere circumstantial evidence. In *Blalock*, the Sixth Circuit had this to say:

> This distinction between direct and circumstantial evidence raises the issue of what constitutes 'direct' evidence. *Dybczak v. Tuskegee Institute*, 737 F.2d 1524, 1528 (11th Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985) (statistics are not direct evidence); *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 69 n. 6 (1st Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984) (statistical evidence is circumstantial); *Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 724 (8th Cir.1984).
>
> Of course, a plaintiff has no stake in characterizing his evidence as either circumstantial or direct, since our holding in Part B, infra, regarding the burden of proof, has been construed by other courts as applicable regardless of whether the evidence is circumstantial or direct. *Lee* [*v. Russell County Board of Education* ], 684 F.2d [769] at 774 [11th Cir.1982]. However the evidence is characterized, the *McDonnell Douglas* for-

mulation is applicable when it is helpful in resolving the ultimate issue of intentional discrimination.

*Blalock,* 775 F.2d at 707–708 n. 5. Therefore, while our Circuit has made it abundantly clear that statistical evidence is not direct evidence, it has specifically refused to define the parameters a district court should use in determining what constitutes direct evidence.

Defendants argue that "[a] powerful degree of evidence of discrimination, coupled with a causal connection to actual discriminatory acts, is required before the conclusion that direct evidence exists is justified." Defendants' Reply Memorandum In Support Of Their Motion For Summary Judgment at 4. However, Part B of the *Blalock* opinion, referred to above, convinces this Court that defendants' requirement that plaintiffs show a "causal connection to actual discriminatory acts" is improper. In Part B of the *Blalock* opinion, the Court examined the standard of causation which a plaintiff is required to meet in a "dual motive" or "mixed motive" case. *Id.* at 709. It is clear from this analysis that the Sixth Circuit considers causation to be a separate element in a mixed motive case to be examined after a court has first made the determination that direct evidence exists. Therefore, to require the plaintiffs to demonstrate a causal connection in order to be deemed to have direct evidence would be redundant.

In this case, plaintiffs have presented evidence that the manager of Findlay Green, Deb Overton, listened to the complaints made by other residents about Carol Aloqaili; that Ms. Overton relied on those comments by forbidding Carol Aloqaili the use of the back door to the laundry room; and that the complaints about Carol Aloqaili ("the way you dress, the way you look and what your husband is {Arabic}") were the product of stereotyping. Therefore, as in *Price Waterhouse,* one plausible conclusion to draw from these circumstances is that Deb Overton reached her decision to forbid Carol Aloqaili use of the back door by taking into account comments that were motivated by discriminatory animus.

Even putting Deb Overton's alleged statements aside, the alleged comments made by Charles Bowser ("fine, if you don't like it here, I suggest you go back to your country") at a time when Mr. Bowser was making an allegedly unfair evaluation of the condition of plaintiffs' former apartment certainly leads to the plausible conclusion that Mr. Bowser prepared his inspection report partially motivated by discriminatory animus. Therefore, this Court finds as a matter of law that these two incidents constitute direct evidence of discrimination.

■ Though the Court finds that the evidence as alleged by plaintiffs constitutes direct evidence of discrimination in the Fair Housing claim, it expresses no view as to the credibility or believability of that evidence. Such questions are the sole province of the trier of fact. Should the trier of fact believe the direct evidence of discrimination, it will be charged with the task of determining whether plaintiffs have shown by a preponderance of the evidence whether the evidence played a motivating role in defendants' adverse treatment of them. If the trier of fact finds that plaintiffs have met their burden, it will determine whether defendants have demonstrated by a preponderance of the evidence that they would have made the same decision in the absence of the alleged discriminatory motivation. *Price Waterhouse,* 109 S.Ct. at 1790 (plurality opinion).[3]

■ If the trier of fact does not believe the direct evidence of discrimination or if plaintiffs fail to satisfy the trier of fact that the evidence played a motivating role in defendants' adverse treatment, the trier of fact will then be required to decide whether the defendants' articulated legitimate reason was the true reason for the decisions they made. See *Price Waterhouse,* 109 S.Ct. at 1788–1789 n. 12 (plurality opinion). Defendants contend that they

---

**3.** "[The defendants] instead must show that [their] legitimate reason[s], standing alone, would have induced [them] to make the same decision." *Price Waterhouse,* 109 S.Ct. at 1792 (plurality opinion).

have numerous legitimate reasons for the way they treated plaintiffs. This Court will not engage in an exhaustive examination of each articulated reason since plaintiffs have presented sufficient evidence in the form of the direct evidence examined above and other circumstantial evidence referred to in their memorandum opposing defendants' motion for summary judgment from which a jury might return a verdict in their favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Therefore, this Court finds that there is a material issue of genuine fact as to whether defendants' articulated reasons were either the true reason or the motivating reason for the decisions they made, and defendants are not entitled to judgment as a matter of law on the Fair Housing claim, 42 U.S.C. § 3604(b) (1977). Fed.R.Civ.P. 56(c).

▆▆ The next federal statute upon which plaintiffs base their case is 42 U.S.C. § 1982 (1981). This statute provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." While § 1982 does not reach discrimination based solely on religion, *Jones v. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968), this Court has already determined that plaintiffs may pursue this claim due to their relationship with an Arab/Palestinian Israeli.

In *Drain v. Friedman*, 422 F.Supp. 366 (N.D.Ohio 1976), now Chief Judge Lambros found that the focus of a housing discrimination under 42 U.S.C. § 1982 is the defendant's *motivation*. *"The motivating reason* upon which a refusal to rent or sell property is premised cannot be, in whole or in any part, racially oriented." *Drain*, 422 F.Supp. at 370 (emphasis added). Like Title VII, the inquiry under 42 U.S.C. § 1982 focuses on the defendant's motivation for his actions. Therefore, this Court finds that the direct evidence analysis is a proper path by which plaintiffs' 42 U.S.C. § 1982 claim may be analyzed.

This Court has already examined plaintiffs' evidence and found within the framework of a summary judgment motion that there is direct evidence of discriminatory animus. This finding applies to the 42 U.S.C. § 1982 claim in the same way as it did to the 42 U.S.C. § 3604(b) claim.

The Court in *Drain* required the plaintiff to make out a *prima facia* case of discrimination, but once proved, it went on to require the defendant to "show that factors other than race were responsible for his decision not to extend a lease to such plaintiff." *Drain*, 422 F.Supp. at 371 (citation omitted). While this Court has assumed for purposes of summary judgment that plaintiffs have made a *prima facia* case of discrimination, see Defendants' Memorandum In Support Of Its Motion For Summary Judgment at 21 ("... this court may assume that Plaintiff can make a showing of a *prima facia* case of discrimination ..."), we find that the procedure for trial outlined above in connection with the 42 U.S.C. § 3604(b) claim should be followed in this claim as well. As in the 42 U.S.C. § 3604(b) claim, plaintiffs have presented sufficient evidence from which a jury might return a verdict in their favor. Therefore, this Court finds that there is a material issue of genuine fact regarding defendants' articulated reasons for their decisions, and defendants are not entitled to judgment as a matter of law on the 42 U.S.C. § 1982 claim. Fed.R.Civ.P. 56(c).

▆▆ The third federal statute which plaintiffs assert a claim under, 42 U.S.C. § 1981 (1981), provides:

All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

This Court has previously limited plaintiffs' § 1981 claim to allegations of discriminatory treatment while attempting to transfer

to another apartment. See Memorandum and Order, Sept. 19, 1989 at 2. Today, defendants attempt to persuade this Court that, notwithstanding the new lease's different rent payment, different term of duration, and different premises to be occupied, plaintiffs never entered into a *new contract* with defendants. As authority for this proposition, defendants cite *Crader v. Concordia College*, 724 F.Supp. 558 (N.D.Ill.1989). Despite being an employment case, *Crader* merely involved an employee's attempt to transfer to a position of greater authority and responsibility. Here, plaintiffs attempted to change core terms of their relationship with defendants when they requested a transfer from a two-bedroom apartment to a three-bedroom apartment. Therefore, this Court will adhere to the conclusion it reached in the September 19, 1989 decision.

■ Alternatively, defendants allege that there are no facts supporting plaintiffs' § 1981 claim. However, this Court is satisfied that plaintiffs have set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While the evidence surrounding plaintiffs' § 1981 claim does not rise to a high enough level to be deemed direct evidence, this Court finds that there is a genuine issue of material fact as to whether defendants' articulated reason for their delay in transferring plaintiffs to the new apartment was the true reason for defendants' actions. Therefore, defendants are not entitled to judgment as a matter of law on the 42 U.S.C. § 1981 claim. Fed.R.Civ.P. 56(c).

■ Plaintiffs' final federal cause of action arises under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1981) et seq. This statute provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

The operative language in this statute, "on the ground of," is very similar to the operative language in the Fair Housing Act, 42 U.S.C. § 3604(b), "because of." Since the language of the statutes involved is similar and since the defendants' intent is the ultimate issue in each claim, this Court finds it proper to apply the same analysis to this claim as it did to the 42 U.S.C. § 3604(b) claim. Therefore, all that was said in the context of the examination of the 42 U.S.C. § 3604(b) claim applies here with equal force. Since genuine issues of material fact exist on the issue of whether defendants' articulated reasons were either the true reason or the motivating reason for the defendants' actions, defendants are not entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Plaintiffs' fifth cause of action is based on the Ohio Revised Code §§ 4112.-02(H), (I), and (J). The statutory language in § 4112.02(H) tracks the language in the federal statutes examined above. Once again, discrimination is prohibited by § 4112.02(H) when it is made *because of, on account of,* or *based upon* race, color, religion, sex, ancestry, handicap, or national origin. See Ohio Rev.Code § 4112.02(H)(1), (2), (3), (4), (5), (7), (11), and (14) (Anderson 1988). Since the Ohio statute has language similar to the federal statutes and since the ultimate issue will once again be defendants' intent, the Court finds that it is proper to apply the same analysis to this claim as we did to the 42 U.S.C. § 3604(b) claim, 42 U.S.C. § 1982 claim, and 42 U.S.C. § 2000d claim. Once again, since genuine issues of material fact exist with respect to whether defendants' articulated reasons were either the true reason or the motivating reason for their actions, defendants are not entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Plaintiffs' sixth and seventh claims sound in tort for intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants' only attack on these two claims is that plaintiffs have not suffered serious emotional harm as that term was defined by the Ohio Su-

preme Court in *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983). However, plaintiff Carol Aloqaili's psychiatrist, Dr. Thomas Sherman, diagnosed Ms. Aloqaili to be suffering from post-traumatic stress disorder as a proximate result of the transactions which led to this complaint. Dr. Thomas Sherman Dep. at 16. While defendants contend that no reasonable person could react the way Ms. Aloqaili reacted, the Court finds that this determination will turn on the credibility of plaintiffs' evidence. Through Dr. Sherman's testimony, plaintiffs have set forth specific facts demonstrating a genuine issue for trial. Therefore, defendants are not entitled to judgment as a matter of law on the common law causes of action for intentional and negligent infliction of emotional distress. Fed.R.Civ.P. 56(c).

Finally, this Court finds that the issue of punitive damages will also turn on the credibility of plaintiffs' evidence.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that defendants' motion for summary judgment be, and hereby is, DENIED.