972 F.2d 346
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cherie BLAZ, et al., Plaintiffs-Appellants,
v.
BARBERTON GARDEN APARTMENT, et al., Defendants-Appellees.
 No. 91-3896.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1992.
 
 Before BOYCE F. MARTIN, Jr. and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case involves the legal standards to be applied in cases alleging violations of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 et seq., also known as the Fair Housing Act. Plaintiff Cherie Blaz brought the present suit against the defendants Barberton Garden Apartments, Robert Morris and Judy Wokojance, alleging that she was discriminated against based upon her "familial status" in violation of the 1988 amendments to the Fair Housing Act, 42 U.S.C. § 3604(a)-(c). The jury found in favor of the defendants. For the reasons that follow, we affirm.
 
 I.
 
 2
 On September 7, 1988, plaintiff Cherie Blaz and James Smith, her boyfriend and future husband, responded to a newspaper advertisement placed by the defendant Barberton Garden Apartments. The advertisement stated that no pets or children were allowed at Barberton. Further, the rental manager at Barberton, Judy Wokojance, informed Blaz and Smith that no children were allowed at the Barberton Apartments.[1]
 
 
 3
 On October 8, 1988, plaintiff Blaz signed a lease for an apartment with defendant Barberton Garden Apartments. Shortly thereafter, Blaz discovered that she was pregnant. Blaz attempted to conceal her pregnancy from the defendants because she and Smith did not have enough money to relocate.
 
 
 4
 Blaz alleges that manager Wokojance discovered her pregnancy in late April or early May 1989, after the enactment of the familial status amendments to the Fair Housing Act. Blaz alleged that Wokojance noticed her pregnancy and commented "I guess we'll be losing you." Barberton counters that Wokojance discovered Blaz was pregnant in January 1989, prior to the familial status amendments to the Fair Housing Act. Barberton also claims that its owner, Robert Morris, contacted Wokojance prior to the Fair House Act amendments in March 1989, and instructed her to end the "no children" policy. Defendants explain Wokojance's "we'll be losing you" comment to Blaz as an assumption by Wokojance that Blaz would leave because the apartment was too small for a family.
 
 
 5
 Blaz gave birth on June 19, 1989. On September 9, 1989, defendants informed Blaz that her lease would not be renewed and that she had to vacate her apartment on October 8, 1989.
 
 
 6
 Blaz claims the non-renewal notice was a result of her familial status in violation of 42 U.S.C. § 3604(a)-(c). Defendants contend that the decision not to renew Blaz's lease was based on legitimate, non-discriminatory reasons. Specifically, the defendants contend that Blaz improperly removed her trash, improperly parked her car, and was the subject of complaints by other tenants.
 
 
 7
 After letters were sent to the defendants by plaintiff's attorney, the eviction halted. Blaz resided at Barberton Garden Apartments until October 1990, when she moved out on her own accord. Blaz then commenced the present action. The defendants won a jury verdict on July 31, 1991. Blaz now appeals, challenging the district court's jury instructions.
 
 II
 
 8
 Effective March 12, 1989, Congress amended portions of the Fair Housing Act to prohibit discrimination on the basis of "familial status." The language of these amendments is broad, according families (defined as grouping of one or more individuals under the age of 18 living with a parent, see 42 U.S.C. § 3602(k)) essentially the same protections as racial minorities and other groups protected by Title VIII. 42 U.S.C. § 3604(a)-(c). Both parties agree that the failure to renew a lease, if based on familial status, is a violation of this statute.
 
 
 9
 Blaz claims that the jury found for the defendants because the district court's instructions were erroneous. Jury instructions are reviewed as a whole to determine whether they adequately inform the jury of the relevant considerations and provide a legal basis for aiding the jury in reaching a decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987). We will reverse only if the instructions, viewed as a whole, "were confusing, misleading, or prejudicial." Leila Hosp. v. Xonics Medical System, 948 F.2d 271, 277 (6th Cir.1991). We now turn to the specific claims of error.
 
 
 10
 * Blaz contends that the district court erroneously instructed the jury that Wokojance's comment "I guess we'll be losing you" would not be a violation of the Act if it reflected her personal belief. This is a misrepresentation of the record. The court clearly instructed the jury that Wokojance's comment could be the basis for liability. The court stated:
 
 
 11
 If you are satisfied from a preponderance of the evidence that the conversation took place after March 12th, 1989, then you must consider and determine the substance of that conversation.
 
 
 12
 If you find from a preponderance of the evidence that as the plaintiff contends was the case, the remarks made by Mrs. Wokojance, constituted a representation to the plaintiff that by reason of the impending birth of a child, she would not be granted the same rights of tenancy as would be granted a woman who was not expecting, or did not have a child; that would constitute a violation of the terms of the Fair Housing Act.
 
 
 13
 On the other hand, if you do not find from a preponderance of the evidence that such was the case, but, as defendants contend, conclude that it was a casual remark by Mrs. Wokojance reflective of her personal belief that the plaintiff would likely be seeking to move to larger housing, it would not be a violation of the Fair Housing Act.
 
 
 14
 (Jt.App. at 103-04) (emphasis added).
 
 
 15
 As the highlighted segment of the jury instruction revels, the court did not indicate that personal prejudice or opinion could not form the basis for a finding of liability. Rather, the court correctly stated that if the jury believed the defendants that Wokojance's statement referred to the size of the apartment, the jury could find that there was no discriminatory animus.
 
 
 16
 Further, this instruction was not given in a vacuum. Just prior to giving the challenged instruction, the court summarized the parties' arguments. We conclude that the jury instruction could not have been misconstrued as the plaintiff claims against the backdrop of the district court's explanation. The instruction was not confusing, misleading, or prejudicial. See Leila, 948 F.2d at 277-78.
 
 B
 
 17
 The second challenged instruction concerns the proper basis for liability under the Fair Housing Act. The district court instructed the jury that if it found "from a preponderance of the evidence that the fact that the plaintiff then had a child was a substantial factor in the issuing of that notice, that would be in violation of the Fair Housing Act." The court defined "substantial factor" as follows:
 
 
 18
 Something is a "substantial factor" if it is a significant factor, playing a determinative role in leading to a particular result. Stated another way, if the same result would not have followed "but for" that factor, it would be deemed a "substantial factor."
 
 
 19
 Applying this "but for" test, familial status need not be the sole factor leading to a particular result, as is true with many decisions we all make, there may be multiple factors which combine to lead to a particular conclusion. It must, however, be a factor which played a determinative role in provoking the result in question to be considered a "substantial factor."
 
 
 20
 Blaz objects to this instruction, claiming that familial status need not be a "substantial factor" or a "but for cause" to violate the Fair Housing Act. Blaz first argues that this instruction requires a plaintiff to prove discriminatory intent. This court has held that a violation of the Fair Housing Act can be established by a showing of discriminatory intent or discriminatory effect. See Arthur v. City of Toledo, 782 F.2d 565, 574-75 (6th Cir.1986).
 
 
 21
 However, we do not agree with Blaz's claim of error. A discriminatory effect or "disparate impact" case involves a facially neutral policy or practice which has the effect of discriminating against a particular protected group. A discriminatory intent or "disparate treatment" case involves an individual claim of differential treatment based upon a forbidden characteristic such as race, sex or familial status. See Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 933-34 (2d Cir.1988). Either standard is sufficient to establish a violation of the Fair Housing Act. See Arthur, 782 F.2d at 574-75.
 
 
 22
 In this case, however, the plaintiff did not complain of a facially neutral policy that had a discriminatory effect or disparate impact. Rather, the plaintiff alleged a case of disparate treatment, involving discriminatory intent on the part of the defendant. The plaintiff's methodology would collapse the distinction between disparate impact and disparate treatment cases. See Huntington, 844 F.2d at 934. In the end, this would make it harder for plaintiffs to prevail under the Fair Housing Act. The law requires proof of intent under disparate treatment, but only proof of discriminatory effect under disparate impact theory. Id. at 934-36.
 
 
 23
 It is true that the Barberton Garden Apartments had a policy of not renting to families with children. This does not transform the plaintiff's case into a disparate impact case. The policy was not a "neutral" policy on its face which had a "discriminatory impact." The policy was clearly a discriminatory rule. However, Barberton claimed that it ended the policy before the familial status amendments to the Fair Housing Act went into effect. The plaintiff offered no proof that the policy still existed after that time, although she notes that the lease form has not been changed. If true, this would be direct evidence of discriminatory intent, and no disparate impact analysis would be necessary. See Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir.1985).
 
 
 24
 Other courts have indicated that cases involving disparate treatment must be analyzed separately from disparate impact cases. See e.g., Phillips v. Hunter Trails Community Ass'n, 685 F.2d 184, 190 (7th Cir.1982); Aloqaili v. National Hous. Corp., 743 F.Supp. 1264, 1268 (N.D.Ohio 1990), appeal dismissed, 915 F.2d 1570 (6th Cir.1990). In any event, much of the plaintiff's confusion comes from conflating the requirement that "familial status" plays a motivating role in the defendant's action with "discriminatory intent." Nothing in the district court's instruction requires proof of discriminatory intent. Rather, the court instructed the jury to consider Blaz's claims of direct evidence of discrimination. If the jury believed that these acts occurred, it then was instructed to determine whether the plaintiff proved that the prohibited characteristic played a "substantial" part in the defendant's adverse treatment of the plaintiff. See Price Waterhouse v. Hopkins, 490 U.S. 228, 249-50 (1989); Aloquaili, 743 F.Supp. at 1270. In Price Waterhouse, the Supreme Court specifically stated that "[a] court that finds for a plaintiff under this standard has effectively concluded that an illegitimate motive was a 'but-for' cause of the employment decision." Id. at 249.
 
 
 25
 The language of the Fair Housing Act prohibits housing decisions "because of ... familial status." 42 U.S.C § 3604(a). The interpretation of the terms "because of ... sex" in 42 U.S.C. § 2000e-2(a)(2) in Price Waterhouse should likewise govern the Fair Housing Act. See Alogaili, 743 F.Supp. at 1270 (applying Price Waterhouse to Fair Housing Act claim). Defining the plaintiff's burden of proof using the terms "substantial factor" and "but for cause" is consistent with Price Waterhouse, 490 U.S. at 262-65 (but for cause and substantial factor both required) (O'Conner, J. concurring). Therefore, the district court did not err in using these terms in its jury instruction. See Leila, 948 F.2d at 278; See also Green v. Century 21, 740 F.2d 460, 464 (6th Cir.1984) (under the Fair Housing Act the plaintiff must only show that race was a substantial or an effective reason, even if not the sole reason for refusal to sell). Given these conclusions we need not reach Blaz's third claim of error concerning the jury instructions on damages.
 
 III
 
 26
 For the foregoing reasons, we AFFIRM the jury's verdict in favor of the defendants.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 27
 I concur in the majority opinion but write separately with respect to the proper causation standard. I am doubtful that the "but for" test, as enunciated by the district court in this case, is consistent with the views of a majority of the Justices in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). I would not decide that issue, however, because the district court remedied any confusion it may have created by giving the allegedly improper instruction when it later charged the jury that "familial status need not be the sole factor leading to a particular result." Thus, although the "but for" instruction may have been inaccurate, I would hold that, taken as a whole, the charge in question " 'fairly and adequately' submit[ted] the issues and applicable law to the jury." Donald v. Wilson, 847 F.2d 1191, 1199 (6th Cir.1988).
 
 
 28
 Accordingly, I concur in the judgment because the plaintiff has not demonstrated reversible error.
 
 
 
 [1]
 The familial status amendments to the Fair Housing Act did not go into effect until March 12, 1989. Prior to that date, a "no children" policy did not violate federal law