Steve **REEVES** and Patricia Reeves, Individually, and as Next Friends of Stephanie Reeves and Stephen Reeves, Plaintiffs,

v.

Sheldon **ROSE**, d/b/a Sycamore Apartments, and Personnel Management, Inc., Defendants.

No. 98–CV–75152.

United States District Court,
E.D. Michigan,
Southern Division.

April 24, 2000.

Morton Weisfeld, Detroit, MI, for plaintiffs.

Gordon Gold, Southfield, MI, for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I. Introduction

This is housing discrimination case alleging discrimination on the basis of race and familial status. Plaintiffs, Steve Reeves, his wife Patricia Reeves, and their children, Stephanie and Stephen Reeves (collectively the Reeves), who are black, say that defendants Sheldon Rose (Rose), d/b/a Sycamore Apartments (Sycamore) and Personnel Management, Inc. unlawfully denied them a two bedroom apartment, relying on a policy that permits a maximum of three persons in a two bedroom apartment. The Reeves claim that defendants violated their rights under (1) the Fair Housing Act (FHA), 42 U.S.C. § 3604(a), (b) and (d); (2) the Michigan Elliot Larsen Civil Rights Act, M.C.L. § 37.2501; and (3) the federal civil rights act of 1866, 42 U.S.C. §§ 1981 and 1982.

Before the Court is defendants' motion for summary judgment, contending that (1) the Reeves cannot show that defendants' refusal to rent a two bedroom apartment to a family of four was a pretext for race and familial discrimination, and (2) they are entitled to summary judgment on plaintiffs' familial status discrimination claim because the three person limit conforms to local and federal building codes.

The Reeves contend that (1) they have established a prima facie case of familial status and race discrimination, (2) defendants cannot articulate a nondiscriminatory reason for their action, and (3) defendants' reasons are a pretext for discrimination.

### II. Factual background

The material facts gleaned from the papers follow.[1]

#### A. The parties

Steve and Patricia Reeves are husband and wife. They are suing on behalf of themselves and as next friends of their twin minor children, Stephanie and Stephen Reeves. Defendant Rose owns and operates Sycamore, located in Orion Township, Michigan. Personnel Management, Inc. is the management company for Sycamore.

#### B. The Reeves' visit to Sycamore

On September 14, 1997, the Reeves went to Sycamore and inquired about renting a two bedroom apartment.[2] The Reeves say that Sycamore's rental agent, Sandy Ramirez (Ramirez), stated that "state law says only one kid to a two bedroom apartment." (Reeves Exhibit A, dep. of S. Reeves p. 33–34, 38, 39–40, 83; Exhibit B, dep. of P. Reeves p. 26–28, 39–40.) Ramirez testified at deposition that she indicated there could only be three people to a two bedroom apartment. (Reeves Exhibit G, dep. of S. Ramirez p. 30–31). The Reeves asked for a copy of the state law, which Ramirez said she could not find.

The Reeves contacted the Fair Housing Center (FHC) of Metropolitan Detroit regarding Sycamore's policy. The FHC conducted an investigation of Sycamore for possible discrimination on the basis of race and familial status.

#### C. The testers

##### 1. Familial status discrimination

One phone test was done for evidence of familial status discrimination. The comparison tester, Deena Gelford (Gelford), called and asked to rent a two bedroom apartment for herself, her husband and one child. The rental agent, named

---

1. Defendants did not follow the Court's motion practice guidelines, but subsequently filed a statement of material facts not in dispute, to which the Reeves have taken issue.

2. The Reeves owned property in Clarkston and wanted to rent an apartment nearby while they built a home on their property. Orion Township is near Clarkston.

"Christy," told her that units were available. The protected tester, Mary Ratkowski (Ratkowski), called and asked to rent a two bedroom apartment for herself and two children. In response to Ratkowski's statement that the apartment was "for myself and 2 daughters", the rental agent, "Christy" responded, "that's fine. There can't be more than 3 people in a 2 bedroom." The FHC evaluated the test as "no significant differences."

### 2. Racial discrimination

Two in-person tests were conducted for evidence of race discrimination. In the first test, the protected tester, Jamilah Humphrey (Humphrey), a black female, asked to rent a two bedroom apartment for herself, her husband and two minor children. Ramirez told her that there were no two bedroom apartments available, but that she could check back the next month. Ramirez gave her some information about area schools and did not inform her of any three person limit. Humphrey's visit lasted about five minutes.

The comparison tester, Jill Slasinski (Slasinski), a white female, asked to rent a two bedroom apartment for herself, her husband and two minor children. Ramirez also told her that no two bedroom apartments were available and that she should check back next month. However, Ramirez also suggested that Slasinski only list herself and her two daughters on the application and leave off her husband because only three people are allowed in a two bedroom apartment. Slasinski's visit lasted about twenty minutes. The FHC evaluated the test as "inconclusive."

In the second test, the protected tester, Ulysses Cox (Cox), a black male, asked to rent a two bedroom apartment. While he was supposed to state that it was for himself, his wife and two minor children, his report does not indicate that he revealed his family size. Ramirez told him that there was one unit available. Cox's visit lasted about two minutes.

The comparison tester, Daniel Chapp (Chapp), a white male, asked to rent a two bedroom apartment for himself, his wife and two minor children. Ramirez told him that a unit was available and took Chapp to see it at his request. No mention about the three person requirement was made. Chapp's visit lasted thirty four minutes. There is no evaluation of these test results from the FHC.

Based upon the above tests, the FHC recommended the Reeves' case for referral to a FHC cooperating attorney and provided the Reeves with a list of attorneys.

### D. Building Codes and other occupancy restrictions

#### 1. Orion Township

The Orion Township Building Code adopts the federal Building Officials & Code Administrators (BOCA) code. § ES–404 of the Orion building code, entitled Space Requirements, states:

ES–404.1, **Area for Sleeping purposes:** Every room occupied for sleeping purposes by one occupant shall contain at least 70 square feet (6.51 m$^2$) of floor area, and every room occupied for sleeping purposes by more than one person shall contain at least 50 square feet (4.65m$^2$) of floor area for each occupant thereof.

ES–404.2, **Overcrowding:** Dwelling units shall not be occupied by more occupants than permitted by the minimum occupancy area requirements of Tale ES–404.2.

#### 2. Sycamore

Sycamore also has a policy regarding "Maximum Occupancy Standards," contained its Management Operations Manuel, set forth in a January 18, 1996 memo as follows:

I. Effective immediately, the policy regarding the maximum number of occupants (including leaseholder) per unit is as follows:

1 Bedroom Apartment    2 occupants
2 Bedroom Apartment    3 occupants

This policy applies to all complexes and supercedes previous occupancy policies.

### 3. Federal rules and regulations

The FHA, amended in 1988, provides, in pertinent part, that "it shall be unlawful [t]o ... make unavailable or deny, a dwelling to any person because of ... familial status ...". 42 U.S.C. § 3604(a). The FHA defines "familial status" as follows:

"Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with—
(1) a parent or another person having legal custody of such individual or individuals; or
(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

42 U.S.C. § 3602(k).

The FHA does not specifically apply to a family of 4 as opposed to a family of 3 or a family of 5. See 42 U.S.C. § 3604(a). The FHA further provides that "[n]othing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1).

In 1988, the Secretary of the Department of Housing and Urban Development ("HUD") published a proposed rule to implement the FHA. See 54 Fed.Reg. at 3234. After the normal administrative proceedings, HUD published a Final Rule on January 23, 1989. See 54 Fed.Reg. 3232. The HUD regulations regarding maximum occupancy track the language in 42 U.S.C. § 3607(b)(1). The provision in 24 C.F.R. § 100.301(b) provides: "Nothing in this part limits the applicability of any

reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 24 C.F.R. § 115.202(c) (1999) provides that "[t]he requirement that the state or local law prohibit discrimination on the basis of familial status does not require that the state or local law limit the applicability of any reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling."

HUD's position regarding occupancy standards is also set forth in a March 20, 1991 memo (the Keating memo), specifically adopted by HUD in late 1998, which provides: [3]

Specifically, the Department believes that an occupancy policy of two persons in a bedroom, as a general rule, is reasonable under the Fair Housing Act.

.    .    .    .    .

On the other hand, there is no basis to conclude that Congress intended that an owner or manger of dwellings would be unable to restrict the number of occupants who could reside in a dwelling. Thus, the Department believes that in appropriate circumstances, owners and managers may develop and implement reasonable occupancy requirement based on facts such as the number and size of the dwelling unit. In this regard, it must be noted that, in connection with a complaint alleging discrimination on the basis of familial status, the Department will carefully examine any such nongovernmental restriction to determine whether it operates unreasonably to limit or exclude families with children.

Memorandum from HUD General Counsel Frank Keating to all Regional Counsel regarding "Fair Housing Enforcement Policy: occupancy Cases." (Mar. 20, 1991) (re-

---

**3.** Prior to 1988, HUD's position regarding occupancy standards was set forth in a 1995 HUD Memorandum by then General Counsel, Nelson Diaz (Nelson memo). The Nelson memo indicated that the only occupancy stan-

dards which would be guaranteed a "safe harbor" would be those based on the BOCA code. See Schwemm, *Housing Discrimination Law and Litigation* (Clark Boardman) § 11.62, p. 11–111, n. 408.2.

printed at 63 Fed.Reg. 70256–57 (Dec. 28, 1998)).

Thus, in reviewing occupancy cases, HUD will consider the size and number of bedrooms and other special circumstances. The Keating memo lists relevant factors as: (1) size of bedrooms and unit, (2) age of children, (3) configuration of unit, (4) other physical limitations of housing, (5) state and local law, and (6) other relevant factors. 63 Fed.Reg. 70257.

### III.  Summary judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

### IV.  Analysis

■ The Reeves' claims under the FHA, 42 U.S.C. § 3601 *et seq.*;[4] 42 U.S.C. §§ 1981, 1982;[5] and Michigan's Elliot–Larsen Civil Rights Act, M.C.L.A. § 37.2501 *et seq.* require the same analysis. *See Selden Apartments v. U.S. Dep't. of Housing and Urban Dev.*, 785 F.2d 152, 159 (6th Cir.1986) ("The courts have required the same standard of proof under [the Fair Housing Act, § 1981, and § 1982]"); *Daniels v. Board of Educ.*, 805 F.2d 203, 207 (6th Cir.1986); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1311 (6th Cir.1989). The FHA prohibits discrimination in the sale or rental of housing on the basis of race, color, religion, sex, national origin, family status, and handicap. 42 U.S.C. § 3604.[6] Dis-

4. Under 42 U.S.C. § 3605(a):

   It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

5. Under 42 U.S.C. § 1981(a):

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. Under 42 U.S.C. § 1982:

   All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

6. § 3604 provides in relevant part:

   As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
   (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
   (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
   (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex,

crimination may be shown by either disparate treatment or disparate impact. *See Arthur v. City of Toledo*, 782 F.2d 565, 574–75 (6th Cir.1986). Courts may also apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), where the plaintiffs provide circumstantial evidence of discrimination. *Selden Apartments*, 785 F.2d at 159.

In order to establish a prima facie case of discrimination under the *McDonnell Douglas* test, plaintiffs must show:

(1) they were a member of a protected class; (2) they attempted to engage in a "real estate-related transaction" with [defendants] and met all relevant qualifications for doing so; (3) [Defendants] refused to transact business with the plaintiffs despite their qualifications; and (4) [Defendants] continued to engage in that type of transaction with other parties with similar qualifications.

*Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir.1994). If plaintiffs establish a prima facie case of discrimination by circumstantial evidence, a presumption of unlawful discrimination arises. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

A defendant can rebut this presumption by producing evidence that the action was taken "for a legitimate, nondiscriminatory reason." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "[T]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089). Although the defendant has this burden of production, at all times the burden of persuasion is on the plaintiffs. *Id.* at 506–07, 113 S.Ct. 2742.

If the defendant rebuts the presumption, plaintiffs must show that the defendant's reasons were a pretext for discrimination and that the defendants intended to discriminate. *See Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1166 (6th Cir.1996). Although such a showing may be made by the fact finder's disbelief of defendants' reasons together with the elements of a prima facie case, the trier of fact may not reject defendants' reasons unless plaintiffs produce "sufficient evidence from which the jury may reasonably reject [defendants'] explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). In order to show that defendants' explanation lacks merit, plaintiffs must demonstrate that the proffered reasons: (1) had no basis in fact, (2) were not the actual reasons, or (3) were insufficient to explain the action. *Id.* at 1084.

### A. Familial status

The Reeves are alleging familial status discrimination under a theory of disparate treatment,[7] and argue that de-

---

handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race,

color, religion, sex, handicap, familial status, or national origin.

. . . .

7. Should the Reeves wish to also proceed under a disparate impact/discriminatory effect theory, they need to further develop this claim. In the Sixth Circuit, the court considers the following factors for determining whether plaintiffs have made out a case for discriminatory effect: (1) how strong is the plaintiff's showing of discriminatory effect on housing; (2) what is the defendant's interest in taking the action complained of; and (3) does the plaintiff seek to compel the defen-

fendants intentionally discriminated against them on the basis of familial status. *See Blaz v. Barberton Garden Apartment*, 1992 WL 180180 (6th Cir. July 29, 1992) (unpublished); *see also McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282–83, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The Reeves need not show that Sycamore denied them the apartment solely because of they are a family with children, but rather that the Reeves familial status "was an effective reason, if not the sole factor" in Sycamore's decision. *Troy v. Suburban Management Corp.*, 1990 WL 97490 *3( 6th Cir. July 13, 1990) (unpublished). Here, the Reeves argue that both Ramirez's statement and Sycamore's policy are evidence of discrimination on the basis of familial status.

In support of their motion, defendants argue that the occupancy requirement (1) is reasonable, (2) facially neutral and (3) the Reeves have no evidence of disparate impact or that the requirement is enforced only against families with children. Defendant's third argument is not relevant because at this point, the Reeves are proceeding under a disparate treatment theory. The first two arguments pertain to the Reeves' claim that Sycamore's policy itself discriminates against families with children. As to Ramirez's statement, de-

fendants simply deny that Ramirez made any such statements.[8]

With respect to the Reeves' claim regarding Ramirez's statement, viewed in the light most favorable to the Reeves, the Reeves have created a genuine issue of material fact as to whether Ramirez's statement that Sycamore permitted only one child per apartment constitutes discrimination on the basis of familial status.[9] *See* 42 U.S.C. § 3604(c), supra note 4.

■ Regarding Sycamore's written policy that only three people are allowed in a two bedroom apartment, defendants argue that they have rebutted the Reeves' case by offering a non-discriminatory reason for the policy—that the three person occupancy limit is reasonable. To this end, defendants initially rely on the occupancy restrictions found in the Orion Township building code and Sycamore's own policies, which defendants say are permitted under the FHA exemption for "reasonable local, state or federal restrictions regarding the maximum number of occupants to occupy a dwelling." 42 U.S.C. § 3607(b)(1).[10]

■ Defendants also offer an "expert affidavit" from Frank Martin, who essentially challenges the findings in the Reeves "expert affidavit," which is discussed be-

dant to affirmatively provide housing for members of minority groups or merely restrain the defendant from interfering with individual property owners who wish to provide such housing. *Arthur v. City of Toledo, Ohio*, 782 F.2d 565, 575 (6th Cir.1986). *See also Mountain Side Mobile Estates Partnership v. Sec. of Housing and Urban Development*, 56 F.3d 1243 (10th Cir.1995) (a FHA case alleging familial status discrimination under disparate impact theory). *Mountain Side* involved a mobile home park with a occupancy restriction of three persons per mobile home. The owner offered business reasons, including water and sewer concerns, for the restriction. The court, considering the same above three factors, held that owner did not violate the FHA.

8. Under the FHA, a defendant is vicariously liable for the discriminatory acts of an agent. *See Green v. Century 21*, 740 F.2d 460, 465 (6th Cir.1984).

9. Because Ramirez's statement provides direct evidence of discrimination, there is no need to do a *McDonnell Douglas* burden shifting analysis. *See Terbovitz v. Fiscal Court of Adair Co., Kentucky*, 825 F.2d 111, 114–115 (6th Cir.1987).

10. The Sixth Circuit Court of Appeals recently held that the party claiming the exemption under § 3607(b)(1) bears the burden of proving that the occupancy restriction is reasonable. *Fair Housing Advocates Association, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626, 633–34 (6th Cir.2000). In *Fair Housing Advocates Association*, the Sixth Circuit also made clear that the mere fact that an occupancy restriction is part of a municipal ordinance "does not remove [it] from the reasonableness inquiry." *Id.* at 636

low. Defendants further assert that the occupancy restriction is non-discriminatory because it is based on the legitimate reason of preventing overcrowding and wear and tear on the apartments. Legitimate business reasons may defeat a plaintiff's prima facie case.

The Reeves challenge defendants' argument that the restriction is reasonable, and argue that the restriction is a pretext for discrimination. The Reeves first note that the second bedroom is 97 square feet, just 3 square feet under the 100 square feet required for 2 persons. The Reeves also note that the HUD regulations indicate that 2 persons per bedroom, without reference to its size, is reasonable and specifically indicate that the age of children is a relevant factor in evaluating reasonableness. Therefore, as Sycamore's policy is more restrictive, it may be unreasonable. The Reeves also proffer the city of Ann Arbor's occupancy restriction, which states that "sleeping rooms used by more than one person" must contain at least 50 square feet per occupant or 40 square feet for occupants under 12 years of age. Finally, the Reeves offer an "expert report," from Irving Rozian, in which he opines that there is sufficient square footage in the apartment to allow for the occupancy of the entire Reeves' family. The Reeves also rely on the results of the testers, noting that during the phone test, only the woman who had two children was advised of the occupancy restriction.

From the foregoing, viewing the evidence in a light most favorable to the Reeves, the Court finds that there is a genuine issue of material fact as to the reasonableness of Sycamore's occupancy restriction and as to whether the occupancy restriction is a pretext for discriminating against families with children. Thus, defendants are not entitled to summary judgment on this claim.

### B. Race Discrimination

■ Defendants contend that the Reeves cannot meet the forth element of their prima facie case—that the housing or rental property remained available thereafter—because there is no showing that defendants would have rented to a white couple with two children. Defendants' argument is not well taken. The results of tester Chapp, a white male, clearly indicate the contrary. Chapp asked to rent a two bedroom apartment for himself, his wife and two minor children. Not only did Ramirez fail to mention to occupancy restriction, she told him a unit was available. Ramirez also advised Slasinski, a white female, to falsify her application in order to avoid the occupancy restriction.

Defendants argue that Ramirez admitted she acted on her own to violate company policy. Again, defendants' argument is misguided. Under the FHA, the property owner is vicariously liable for the discriminatory acts an agent. *See Green v. Century 21*, 740 F.2d 460, 465 (6th Cir.1984).

Moreover, as the Court has recognized, "evidence resulting from the experience of testers is admissible to show discriminatory conduct on defendant's part." *Laudon v. Loos*, 694 F.Supp. 253, 254, n. 1 (E.D.Mich.1988) (J. Cohn) (citing *Zuch v. Hussey*, 394 F.Supp. 1028, 1051 (E.D.Mich. 1975)).

Because defendants have failed to rebut the Reeves' prima facie case, summary judgment is also inappropriate on this claim.

### IV. Conclusion

For the reasons stated above, defendants' motion is DENIED.

SO ORDERED.