Melvin E. **GREEN** and John W. Saunders, III, Plaintiffs-Appellees,

v.

**CENTURY 21,** Briarcrest Realty, Inc., Martin Fewlas, Donna Fewlas, Ruth Ann Bryce and Helen Holman, Defendants-Appellants.

No. 82–3751.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1983.

Decided Aug. 13, 1984.

Richard G. Farrar (argued), Jane L. Lackey, Farrar & Lackey, Steven E. Marcus, Toledo, Ohio, for defendants-appellants.

C. Thomas McCarter (argued), Newcomer & McCarter, Toledo, Ohio, for plaintiffs-appellees.

Before EDWARDS and MARTIN, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.*

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

Defendants in this case appeal from a judgment in favor of plaintiffs in a civil rights action alleging racial discrimination in the sale of real estate. This case involves a jury award totalling $42,200 in compensatory and punitive damages against a real estate firm, two of its sales agents and the sellers. The appellees in the case are plaintiffs Green and Saunders, two single black men who had offered to purchase the somewhat dilapidated four-unit apartment in a white neighborhood in Toledo.

---

* Honorable Thomas E. Fairchild, Senior Circuit Judge, U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

462

## I. FACTS

It is clear that at one time offers on the property from both the two black men and a single white woman were before the owners, Martin and Donna Fewlas. It appears that the jury found from the evidence that the first firm offer presented was made by plaintiffs, after which a prospective white buyer was solicited by another Century 21 agent, and the owners offered to sell her the house. Other evidence which tends to support the jury verdict against the different defendants includes 1) that plaintiffs' offer was for $50,000 (a sum which was never exceeded by Mrs. Gordon, the prospective white buyer), 2) that after plaintiffs' offer had been submitted, a different Century 21 agent called Mrs. Gordon for the purpose of soliciting an offer from her for the property, in violation of Century 21's policy, 3) that Mrs. Gordon never offered as large a down payment as did the plaintiffs, nor did she possess as sound an earning basis for financing the necessary mortgage payments, and 4) recognizing the inadequacy of Mrs. Gordon's proffered $25.00 earnest money, the Fewlasses then rejected plaintiffs' offer but offered to accept Mrs. Gordon's offer conditioned on her paying $500.00 as down payment on the property, an offer which was never made to the plaintiffs.

Other facts provided by this record include: The owners, Martin and Donna Fewlas, lived in an all white neighborhood quite near the rental property being sold. They had never rented to black tenants and insisted on visiting the building with all prospective buyers.

When Broker Wakelin called the owners to report the plaintiffs' offer, Mrs. Fewlas first asked him whether it came from the black buyers. Wakelin confirmed that it did. He did not indicate that federal law prohibited the seller from taking race into account. When the owners came to the office to review the plaintiffs' written offer, Wakelin suggested that if they waited half an hour, he could have a second offer prepared which they could consider at the same time. Wakelin testified that he left the room while the owners considered the two offers, and that he did not point out that plaintiffs clearly had superior financial resources. Wakelin, not the owners, wrote the rejection on the plaintiffs' offer and the acceptance on the Gordon offer. When the white buyer was unable to produce the earnest money and plaintiffs protested their rejection, Wakelin did not revive the plaintiffs' offer.

These events were followed by the filing of a suit in the U.S. District Court for the Northern District of Ohio, Eastern Division, in which plaintiffs sought damages and injunctive relief preventing defendants from conveying the property to anyone but them. The District Judge granted the prayer for injunctive relief in full. The Fewlases, however, declined to sell.

After a full trial to a jury, the jury returned unanimous verdicts for the plaintiffs against defendant Century 21 for $20,000.00 compensatory damages and $10,000.00 punitive damages; defendants Fewlases, $6,000.00 compensatory damages and $5,000.00 punitive damages; defendant Bryce, one of the real estate agents, $500.00 compensatory damages and $200.00 punitive damages, and defendant Holman, $500.00 compensatory damages and $100.00 punitive damages. Defendants then filed notices of appeal from those verdicts.

## II. DECISION

On this appeal, appellants claim that the trial judge committed reversible error in his instructions of the applicable law; that plaintiffs' counsel's closing argument was improper and prejudicial; that the trial judge disparaged defense counsel in front of the jurors, overruling "an inordinate number of defense counsel's objections while sustaining those of plaintiffs' counsel"; and that the jury's determination of liability and amount of damages awarded are clearly against the manifest weight of the evidence presented at trial.

We approach review of this trial keeping in mind the fundamental applicable law as stated by Justice Stewart in *Jones v.*

*Alfred Mayer Co.,* 392 U.S. 409, 441–43, 88 S.Ct. 2186, 2204–05, 20 L.Ed.2d 1189 (1968) (emphasis supplied):

[T]his Court recognized long ago that, whatever else they may have encompassed, the badges and incidents of slavery—its "burdens and disabilities"—included restraints upon "those fundamental rights which are the essence of civil freedom, namely, the same right ... to inherit, purchase, lease, sell and convey property, as is enjoyed by white citizens." *Civil Rights Cases,* 109 U.S. 3, 22, 3 S.Ct. 18, 29 [27 L.Ed. 835]. Just as the Black Codes, enacted after the Civil War to restrict the free exercise of those rights, were substitutes for the slave system, so the exclusion of Negroes from white communities became a substitute for the Black Codes. And when racial discrimination herds men into ghettos and makes their ability to buy property turn on the color of their skin, then it too is a relic of slavery.

Negro citizens, North and South, who saw in the Thirteenth Amendment a promise of freedom—freedom to "go and come at pleasure" and to "buy and sell when they please"—would be left with "a mere paper guarantee" if Congress were powerless to assure that a dollar in the hands of a Negro will purchase the same thing as a dollar in the hands of a white man. *At the very least, the freedom that Congress is empowered to secure under the Thirteenth Amendment includes the freedom to buy whatever a white man can buy, the right to live wherever a white man can live. If Congress cannot say that being a free man means at least this much, then the Thirteenth Amendment made a promise the Nation cannot keep.*

Additionally, we call attention to congressional enactments applicable to this case. The first, 42 U.S.C. § 1982, was adopted in 1866 and the second, the Fair Housing Act, 42 U.S.C. § 3604, was adopted in 1968 as follows:

### § 1982. Property rights of citizens

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

### § 3604. Discrimination in the sale or rental of housing[1]

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, or national origin, or an intention to make any such preference, limitation, or discrimination.

(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, or national origin.

---

1. Note that 42 U.S.C. § 3604 was adopted subsequent to the Supreme Court's decision in *Jones* *v. Alfred H. Mayer Co., supra.*

■ We now turn to appellants' claims of error. First, on careful review of the facts as disclosed by the record in this case, we find that appellants' claims that the jury's determination of liability and amount of damages are against the "manifest weight of the evidence presented at trial" approaches frivolity, and we reject it. Second, we find no reversible error in appellants' other contentions except arguably in relation to two of the District Judge's jury instructions which we discuss below. The facts showing race discrimination in this case are considerably stronger than those cited by this court in *McDonald v. Verble*, 622 F.2d 1227 (6th Cir.1980), where we remanded for "determination of damages, costs and attorneys' fees in favor of plaintiffs."

In addition to mental anguish, humiliation, embarrassment, and emotional stress, plaintiffs offered proof of claimed loss of the benefit of this particular bargain. Although the amount awarded strikes us as at the upper limit of sustainable amounts, we do not deem it excessive.

■ Appellants protest the District Judge's instruction as to the fourth element of proof required to establish a prima facie cause of action under the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq.

As recited by the District Court, the fourth element was:

(4) That *an* effective reason for Defendant's refusal was the race of the Plaintiffs.

The DeVitt and Blackmar instruction which the District Judge relied on reads as follows:

that *the* effective reason for defendant's refusal was the race of the plaintiffs.

3 DeVitt & Blackmar, *Federal Jury Practice and Instructions* § 92.20 (3d.ed.1977).

Comparison of these two versions shows that the District Judge substituted "an" for "the" in the instruction above. While the District Judge had previously made known to appellants the fact that they would have an automatic exception to his jury instructions, we believe this would not obviate appellants' counsel's duty to call the specific error to the attention of the District Judge while he was in a position to correct it. Considering the proof of clearly discriminatory conduct in this case, we do not consider the error, if any, to be such as to have affected the outcome of the case nor to require a new trial.

■ Further, assuming that (in spite of failure to object at trial), the defendants can object on appeal, the District Judge's instruction is consistent with an explanatory note in *Devitt and Blackmar:*

There may be a question as to whether the plaintiff must show that racial discrimination is the "sole reason" for the refusal. The plaintiff might consider it preferable to request such a charge if he feels it can be proved. All that might be necessary is to show that racial discrimination was a substantial reason, even if not the sole one. Cf. *Donruss v. United States*, 384 F.2d 292, 296 (6th Cir.1967), reversed 393 U.S. 297, [89 S.Ct. 501, 21 L.Ed.2d 495] (1969).

3 *Devitt and Blackmar*, § 92.20, at 260. In *Donruss* the Supreme Court held that it was sufficient to show that tax avoidance was one factor influencing the defendant rather than the dominant, controlling, or impelling motive. Similarly in housing discrimination suits, other circuits have clearly and repeatedly found liability when race was only one factor, rather than the sole reason for refusal to sell. *Moore v. Townsend*, 525 F.2d 482, 485 (7th Cir.1975); *United States v. Mitchell*, 580 F.2d 789, 791 (5th Cir.1978). Judge Young's instruction that the jury could find liability if race was "an effective reason for defendants' refusal to sell" was therefore an accurate statement of housing law. There was no error in the instruction.

■ Our review of this entire record convinces us that there is no reversible error (except one applicable only to the two real estate agents) which is of such a character as to require setting aside the jury verdicts and remanding for a new trial. The erroneous instruction which may have preju-

diced at least these two defendants was as follows:

> [I]f any one or more of the various parties-Defendant or their agents, servants, employees or shareholders was or were guilty of any act of discrimination, then the Defendant property owners and the Defendant corporation are all responsible for it, whatever their relationship to each other may have been.
>
> This does not mean, however, that if your finding in this case is in favor of the Plaintiffs, you may only make an award of damages against all of the Defendants. On the contrary, if you so find, you may award different amounts of damages against the various defendants in accordance with your judgment as to the degree of culpability ....

The trial court submitted four separate award forms to the jury, one for each of the defendants. The jury awards rendered indicate that the jurors found the defendants had varying degrees of culpability: 1) Century 21/Briarcrest (Broker Wakelin) $30,000; 2) the owners Fewlases $11,000; 3) Agent Bryce $700; and 4) Agent Holman $600.

This instruction was hardly a model of clarity, but as to defendants Century 21 and the Fewlases, we do not consider that it represents reversible error under the record in this case. We observe that there may well be questions about the theory on which the district court permitted the jury to apportion liability for compensatory damages among the defendants. It suffices to say that no party appears to have objected to that aspect of the way in which the case was submitted to the jury, and it is not an issue on this appeal.

■ The only defendants possibly prejudiced by the instruction that all must be found liable (if any are) are the two sales agents whom the jury found least culpable. Under federal housing law a principal cannot free himself of liability by delegating a duty not to discriminate to an agent. *Marr v. Rife*, 503 F.2d 735 (6th Cir.1974). The law does not, however, make the two sales agents liable for discriminatory acts by their principals, Century 21 and the property owners. Thus it is possible the jury erroneously found agents Bryce and Holman liable because the judge instructed that all defendants must be liable, no matter what their relationship to each other. On the other hand, there is no question but that the jury found that Century 21 and the owners were the defendants most responsible for the discriminatory refusal to sell. The award of both compensatory and punitive damages against those defendants holds them properly liable in accord with the degree of their own culpability as determined by the jury.

The judgments entered by the District Court as to defendants Century 21, Briarcrest Realty, Inc., and Martin Fewlas and Donna Fewlas are affirmed. The judgments entered against Ruth Ann Bryce and Helen Holman are vacated and as to them the case is remanded to the District Court for new trial.