**Anthony DARBY and Deeva Darby, Plaintiffs,**

v.

**HEATHER RIDGE and Dart Properties, Inc., Defendants.**

**Civ. A. No. 91–76896.**

United States District Court, E.D. Michigan, S.D.

Nov. 6, 1992.

E. Michael Morris and Cherie B. Ritter, Bloomfield Hills, Mich., for plaintiffs.

James A. Siver and Kevin V.B. Schumacher, Mason, Mich., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On December 16, 1991, plaintiffs Anthony and Deeva Darby filed suit alleging violations of 42 U.S.C. §§ 1981 and 1982 and several violations of Title VIII of the Civil Rights Act of 1968 ("Fair Housing Act"), 42 U.S.C. § 3601, *et seq.*, by defendants Heather Ridge and Dart Properties, Inc. Plaintiffs, a black couple, allege that defendants practiced racial discrimination in their leasing practices of rental property. On June 15, 1992, defendants Heather Ridge and Dart Properties, Inc. filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiffs filed a response to defendants' motion July 2, 1992. Defendants replied to plaintiffs' response July 9, 1992.

The court finds there are no genuine issues of material fact with respect to allegations under 42 U.S.C. §§ 1981 and 1982. Consequently, defendants motion for summary judgment on Counts I and II will be granted. The court finds, however, there are genuine issues of material fact for allegations under the Fair Housing Act. Therefore, defendants' motion for summary judgment will be denied on Counts III, IV, and V.

### BACKGROUND FACTS

In the spring of 1991, plaintiffs, then residents of Romulus, Michigan, were in the process of selling their home. Seeking new housing, plaintiffs visited the rental office of defendant Heather Ridge Apartments on or about May 29, 1991, to inquire about leasing an apartment. Upon entering the rental office, plaintiffs were advised to come back in an hour, as there was no one to assist them at that time. Plaintiffs found this request odd, as there were three leasing agents in the rental office and only one white couple to be helped; nevertheless, plaintiffs left.

Plaintiffs returned to the office an hour later but were again told that no one was

available to assist them and that they would have to wait an additional thirty minutes to see a leasing agent. Despite it being an oppressively warm day, plaintiffs complied with defendants' request and waited in their car with their one-year old son.

After waiting the additional thirty minutes, plaintiffs were shown a model and given a tour of defendants' apartment complex. Plaintiffs allege that during their tour of the complex they saw a white child swimming in the pool and commented that their son would also enjoy using the pool. Defendants' agent then told plaintiffs that children were not allowed in the swimming pool, a fact which plaintiffs later learned was false.

After completing their tour, plaintiffs asked about immediate availability and were told that nothing was available. Plaintiffs were advised that the wait for a vacancy might be as long as three to four months, as no apartment was known to be coming available until the middle of August. Before leaving the apartment complex, plaintiffs filled out a visitor card but did not complete an application or authorize the leasing agents to conduct a credit check. Plaintiff Anthony Darby claims that he offered to leave with the leasing agent a security deposit but was told that a deposit would be useless since the wait for a vacancy was so long. Defendants deny plaintiff Darby's assertion that he offered to leave a security deposit.

Less than a week after visiting defendants' apartment complex, plaintiffs contacted the Fair Housing Center of Metropolitan Detroit ("FHC"), a non-profit corporation that investigates claims of discrimination in housing practices. A standard investigative procedure of the FHC is to send out testers, pairs of white and black individuals, to the complex in question to see if the individuals are treated equally with respect to housing terms, conditions, and availability. The FHC sent out three pairs of testers, three white individuals and three black individuals, between June 9, 1991, and July 14, 1991, to determine whether defendants practiced racial dis-

crimination. After visiting defendants' complex, the testers filed their reports with the FHC. These reports do not contain any conclusions regarding plaintiffs' claims of racial discrimination; rather, the reports contain descriptions of how the testers were treated by defendants' agents, and descriptions of the terms, conditions, and availability of leasing that were offered to them. On the basis of these reports, plaintiffs conclude that defendants discriminated against them.

## STANDARD OF REVIEW

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be

discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■■■■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evi-

dence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## COUNTS I AND II

■■ Count I alleges violation of 42 U.S.C. § 1981. Section 1981 provides

Equal rights under the law. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Count II alleges violation of 42 U.S.C. § 1982. Section 1982 provides

Property rights of citizens. All citizens of the United States shall have the same right in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

To establish a *prima facie* case for violations of sections 1981 and 1982, plaintiffs must show

1. that plaintiffs are members of a racial minority;
2. that plaintiffs applied for and were qualified to rent or purchase the vacant apartment;
3. that defendants acted with discriminatory intent in rejecting plaintiffs;[1] and
4. that the opportunity to rent the vacant apartment remained open.

*Selden Apartments v. United States Dep't. of Hous. and Urban Dev.,* 785 F.2d 152, 159 (6th Cir.1986); *Shaw v. Cassar,* 558 F.Supp. 303, 312 (E.D.Mich.1983), citing *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1038 (2d Cir.1979); *Hobson v. Humphreys, Inc.,* 563 F.Supp. 344, 351

---

1. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 382–391, 102 S.Ct. 3141, 3145–50, 73 L.Ed.2d 835 (1982); *Erebia v. Chrysler Plastic Prods. Corp.,* 772 F.2d 1250, 1257 (6th Cir.1985); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 69 (6th Cir.1985); *Leonard v. City of Frankfort Elec. & Water Plant,* 752 F.2d

189, 193 (6th Cir.1985). To establish the element of discriminatory intent, plaintiffs need show only that race was one factor in defendants' decision not to contract with plaintiffs. *Green v. Century 21,* 740 F.2d 460, 464 (6th Cir.1984). Race need not have been the only basis of defendants' decision. *Id.*

(W.D.Tenn.1982); *McHaney v. Spears,* 526 F.Supp. 566, 570 (W.D.Tenn.1981).

A material element of plaintiffs' *prima facie* case for Counts I and II, as set forth by the courts in *Selden* and others, is the fact that "plaintiffs applied for and were qualified to rent or purchase the vacant apartment." *Selden,* 785 F.2d at 159. According to this language, plaintiffs cannot seek redress under sections 1981 and 1982 unless (a) they applied for a vacant apartment, and (b) were qualified to rent from defendants.

Plaintiffs concede they failed to apply for an apartment but invoke the futile gesture doctrine to excuse their failure to apply. The futile gesture doctrine, as applied in Title VII employment discrimination cases, relieves a plaintiff from having to show that he first applied for employment before bringing suit for employment discrimination. If a plaintiff can show that he knew of an employer's discriminatory policies or practices and did not apply for employment because of defendants' well-known discriminatory policy, he need not apply before bringing suit for employment discrimination. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 365–66, 97 S.Ct. 1843, 1869–70, 52 L.Ed.2d 396 (1977). The doctrine recognizes that the class of victims of racial discrimination are not limited to those who first apply for employment and are rebuffed by overt discrimination, but also includes those who are discouraged from applying by a well-known, discriminatory policy.

As translated into housing discrimination cases, the futile gesture doctrine requires

1. that a plaintiff be a member of a racial minority who makes a bona fide offer to rent and is financially capable of renting an apartment when offered;

2. that an owner of leasing property discriminated against people of the plaintiff's race;

3. that a plaintiff was reliably informed of the owner's discriminatory policies and would have taken steps to rent the property but for the discrimination; and

4. that the owner would have discriminated against the plaintiff had the plaintiff disclosed an interest in the property.

*Pinchback v. Armistead Homes Corp.,* 907 F.2d 1447, 1452 (4th Cir.), *cert. denied* — U.S. ——, 111 S.Ct. 515, 112 L.Ed.2d 527 (1990). *Pinchback* stands for the proposition that plaintiffs cannot invoke the futile gesture doctrine without first producing evidence that their interest in an apartment was cut short by *actual* knowledge of defendants' discriminatory practices. *See International Bhd.,* 431 U.S. at 365, 97 S.Ct. at 1869.

In the instant action plaintiffs cannot avail themselves of the futile gesture doctrine because they lacked actual knowledge of defendants' discriminatory practices. Plaintiffs have alleged discrimination *after* visiting defendants' complex and consulting with agents of the FHC, but this does not establish the fact that defendants practiced discriminatory policies that plaintiffs knew about before plaintiffs visited defendants' complex. Plaintiffs' allegations are based upon inferences drawn from the testers' reports, not actual knowledge of discrimination.

Defendants urge the court to grant summary judgment against plaintiffs by alleging that plaintiff Deeva Darby was adjudicated a bankrupt in February or March 1991 in the Eastern District of Michigan. Defendants argue that this blemish on plaintiffs' credit history made plaintiffs ineligible to rent from defendants. Defendants have not attached affidavits or produced other evidence to support their allegation that Deeva Darby was adjudicated a bankrupt. Nor have defendants provided the court with evidence supporting their conclusion that this blemish made plaintiffs ineligible to rent from them. Consequently, the court rejects defendants' allegation as evidence supporting their motion for summary judgment.

Nonetheless, because the court finds that plaintiffs did not apply for a vacant apartment and were not excused from doing so under the futile gesture doctrine, summary

judgment will be entered against plaintiffs as to Counts I and II.

## COUNT III

■ Counts III is governed by 42 U.S.C. § 3604(a). Section 3604(a) provides

Discrimination in the sale or rental of housing.

[I]t shall be unlawful—

(a) To refuse to ... rent after the making of a bona fide offer, or to refuse to negotiate for the ... rental of, or to otherwise make unavailable or deny, a dwelling to any person because of race ...

As the statute clearly states, plaintiffs' *prima facie* case is satisfied by a showing of any one of the elements listed below:

(1) defendants' refusal to rent after the making of a bona fide offer; or

(2) defendants' refusal to negotiate for the rental of an apartment; or

(3) defendants otherwise making unavailable or denying a dwelling to any person because of race.

Plaintiffs allege that defendants employed subtle or discrete discrimination which is prohibited by the provision that makes it unlawful to "otherwise make unavailable ... a dwelling...."

The subtle or discrete discrimination allegedly practiced by defendants' agents consisted of dilatory tactics, slight misrepresentations of fact, and subtle behavior intended to frustrate plaintiffs' attempts to secure housing at Heather Ridge. They cite in support of their argument the defendants' agents' requests that plaintiffs wait an hour, then an additional thirty minutes in their car before being assisted. Plaintiffs also cite the misstatement of defendants' agent regarding the use of the swimming pool by children. Finally, plaintiffs allege that there existed an overall unfriendly and unwelcoming attitude towards plaintiffs.

Plaintiffs' assertions are sufficient to preclude a motion for summary judgment because the jury could reasonably draw different conclusions from these allegations. When subtle or discrete discrimination is alleged, a fine line separates discrimination from lawful behavior. For example, the jury might conclude that defendants' agents' request that plaintiffs wait in their car before being assisted was simply rude and not discriminatory. The jury could reasonably conclude that defendants' agents were merely preoccupied with work unrelated to customer assistance, or that such behavior constituted subtle attempts to steer plaintiffs' away. Similarly, the unfriendly and unwelcoming atmosphere that plaintiffs claim existed might reasonably be construed as the product of plaintiffs' imagination or an accurate depiction of defendants' complex. Questions of interpretation are best resolved by the trier of fact when a fine line separates subtle discrimination from lawful behavior. Consequently, the court will defer to the jury's interpretations and deny defendants' motion for summary judgment on Count III.

## COUNTS IV AND V

■ Count IV is governed by 42 U.S.C. 3604(b). Section 3604(b) provides

[I]t shall be unlawful—

To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

Count V, 42 U.S.C. 3604(d), states

[I]t shall be unlawful—

To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

■ Count IV, 42 U.S.C. 3604(b), and Count V, 42 U.S.C. 3604(d), are in essence allegations that defendants made misrepresentations of availability to plaintiffs. Plaintiffs' *prima facie* case under sections 3604(b) and (d) is not explicitly outlined either in statutory or case law. Defendants have suggested in their motion for summary judgment four elements which constitute plaintiffs' *prima facie* case un-

der section 3604(b) and (d). These elements are

1. that plaintiffs are members of a racial minority or other protected class;
2. that plaintiffs requested information as to availability of a particular unit type;
3. that defendants failed or refused to provide truthful information as to availability of that unit type; and
4. that white applicants were provided with truthful information.

The *prima facie* case suggested to this court by defendants appears to be compatible with the underlying purpose of section 3604 and reasonable in light of the decision in *McDonald v. Verble*, 622 F.2d 1227 (6th Cir.1980). In *McDonald*, the defendant, a real estate agent, failed to inform plaintiffs, prospective black buyers, of the availability of certain property until forced to do so and later made that information available to a white, prospective buyer. In vacating the district court's decision dismissing plaintiffs' complaint, the United States Court of Appeals for the Sixth Circuit court held, "We read these actions as violative of the letter *and spirit* of 42 U.S.C. 3604(a), (b) and (d)." *McDonald*, 622 F.2d at 1233 (emphasis added). Finding defendants' suggestion reasonable in light of *McDonald* and the underlying purpose of section 3604(b) and (d), this court adopts the four-part test.

Plaintiffs' primary evidence supporting their claims under Counts IV and V centers around representations of availability given to the testers and plaintiffs during their visits to defendants' complex. The court believes the testers' reports reveal genuine issues of material fact.

Two inferences can be drawn from the testers' reports. One inference supports plaintiffs' allegation that defendants discriminated against them. When the Darbys inquired about availability in May 1991, they were told that nothing would be available until the middle of August 1991. Defendants' leasing agents offered to call plaintiffs if an apartment became available sooner. One week later the first pair of testers visited defendants' complex. Both testers, one white woman and one black woman, were told that an apartment would be available in a week or so. Defendants never notified plaintiffs of the available apartment.

The terms of availability that were told the testers were different from those told to plaintiffs. First, plaintiffs were told that the earliest vacancy would be in mid-August, whereas both testers were told of vacancies in early June. Second, plaintiffs were never notified of the vacancy although defendants' leasing agents assured them that they would contact them if a vacancy arose. It is possible that the trier of fact could conclude that plaintiffs were discriminated against although the black testers were told similar terms of availability as were the white testers.

The jury might also determine that defendants did not discriminate on the basis of race given the consistent, unbiased information given both white and black testers. As was previously mentioned, the first pair of testers was told of similar availability when they visited defendants' complex June 9, 1991. The second pair of testers, Mr. Hoth, a white male, and Mr. Bowden, a black male, visited defendants' complex approximately one month after plaintiffs' visit; and both were told that two-bedroom apartments were not available until late July. Similarly, the reports of Ms. Kotzen, a white female, and Ms. Bibb, a black female, reveal no material discrepancies in the information provided them regarding availability. Indeed, Ms. Bibb, the black female, was told of availability in mid-August, whereas Ms. Kotzen was notified that the earliest availability would be at the end of August.

Given the nearly identical information provided both white and black testers, the jury might find that defendants did not practice racial discrimination despite the fact plaintiffs were given conflicting information. Where reasonable minds might differ as to the interpretation of evidence, summary judgment is inappropriate. *See Lucas*, 738 F.Supp. at 217. Consequently, defendants' motion for summary judgment on Counts IV and V will be denied.

## RULE 11 SANCTIONS

Attached to defendants' motion for summary judgment is a request for sanctions under Fed.R.Civ.P. 11. Rule 11 authorizes sanctions against a party that files a motion "... interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Although the court finds that plaintiffs' complaint did not allege issues of material fact sufficient to avoid a motion for summary judgment, the court does not believe plaintiffs' complaint was frivolous or interposed for purposes of delay or harassment. Consequently, defendants' request for Rule 11 sanctions will be denied.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendants' June 15, 1992 motion for summary judgment is GRANTED as to Counts I and II and DENIED as to Counts III, IV, and V.

It is further ORDERED that defendants' request for Rule 11 sanctions is DENIED.