81 F.3d 161
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Delmon A. TERRELL; and Catherine Campbell-Terrell,
Plaintiffs-Appellants,
v.
RICHTER-ROSIN, INC., also known as Richter-Rosin Homes, also
known as Richter Construction Company; and Dennis
Yashinsky, Jointly and Severally,
Defendants-Appellees.
 No. 94-1458.
 United States Court of Appeals, Sixth Circuit.
 March 19, 1996.
 
 1
 Before: KENNEDY and MOORE, Circuit Judges, and JOHNSTONE, Senior District Judge.[1]
 
 OPINION
 
 2
 EDWARD H. JOHNSTONE, Senior District Judge.
 
 
 3
 Delmon A. Terrell and Catherine Campbell-Terrell, plaintiffs-appellants, appealed this action from the United States District Court for the Eastern District of Michigan. They alleged that Richter-Rosin, Inc. and Dennis Yashinsky, defendants, violated their rights under 42 U.S.C. § 1981, 42 U.S.C. § 1982, the Fair Housing Act, and Michigan's Elliot-Larsen Civil Rights Act. Following a jury verdict in favor of the defendants, the court entered a judgment dismissing the Terrells' action. The Terrells then filed a timely appeal. They raised four issues for our consideration. These issues include whether the trial court committed reversible error by: (1) admitting the testimony of two African-American purchasers; (2) omitting evidence of defendants' sale to white purchasers; (3) instructing the jurors that they could consider prior sales to African-Americans; and (4) giving a jury instruction on the statute of frauds. Finding no reversible error, we affirm the judgment of the district court.
 
 I.
 
 4
 In June 1991, the Terrells, who are African-Americans, decided to build a home in Mission Springs Subdivision in West Bloomfield, Michigan. They entered into negotiations for the purchase of a lot and the construction of a house in this subdivision with Richter-Rosin. After negotiating for several days, the Terrells decided that they would build an "Aspen I" model home with an elongated garage. Their discussions culminated on June 29, 1991 when the Terrells and Richter-Rosin entered into a contract for the construction of a home and sale of a lot in Mission Springs. The Terrells agreed to pay Richter-Rosin $271,900.00 for the land and cost of building their home. Dennis Yashinsky, Richter-Rosin's vice-president, signed the contract on behalf of the company.
 
 
 5
 The Terrells claimed that throughout the negotiation process, and after the contract was signed, Richter-Rosin and Yashinsky discriminated against them because of their race. In support of their claim of discrimination, the Terrells maintained that defendants treated them unfairly and would not accommodate their needs. For example, the Terrells stated that while Yashinsky had never missed a meeting with white purchasers, he missed at least four scheduled meetings with them. Further, Christina Krupa, the salesperson assigned to work with the Terrells, testified that Yashinsky commented that he was "going to have problems" with the Terrells even though he normally remarked "we don't want to lose this deal" with white customers. Moreover, Richter-Rosin routinely placed a "sold" sign on a lot once a contract had been finalized. However, the company never placed such a sign on the Terrells' lawn.
 
 
 6
 The Terrells also argued that Yashinsky deliberately concealed a twenty foot underground utility easement on the north side of their lot. Yashinsky testified that he did not promptly inform the Terrells of the easement because he tried to resolve the problem himself and did not want to unnecessarily alarm them.
 
 
 7
 Due to the utility easement, the Terrells could not build an elongated garage on their lot. It appears that the inability to build this enlarged garage led to the unraveling of the contract between the parties. The undisputed facts show that the contract was modified by extending the length of the garage an additional twenty-five feet. Only the Terrells initialed the change. The Terrells said that after obtaining approval from Yashinsky, Krupa typed this modification onto the contract. They then initialed the approved change. The defendants contended that the Terrells unilaterally changed the size of the garage without their permission.
 
 
 8
 Upon learning that their desired garage could not be built on the selected lot, the Terrells sent a letter to Yashinsky objecting to the concealment of the easement and containing these alternatives:
 
 
 9
 1. Richter/Rosin Homes will provide another lot (lots 3 and 55 are not acceptable) upon which our home can be contracted as described in our original agreement/addendum.
 
 
 10
 2. Richter/Rosin Homes will construct our home as described in our agreement/addendum in their new sub-division (Woods of Orchard Lake), or
 
 
 11
 3. Richter/Rosin Homes will refund all down payments made to date (2 payments @ $8,157.00 each).
 
 
 12
 Five days after sending the letter, the Terrells went to Yashinsky's office for a scheduled meeting. Instead of meeting with them, Yashinsky handed the Terrells a letter which said:
 
 
 13
 Your request to build your home at the Woods of Orchard Lake cannot be satisfied at your contract price since lot costs would increase your contract price.
 
 
 14
 The Terrells contended Yashinsky did not suggest any alternatives or invite the Terrells to negotiate further.[2] Consequently, the parties rescinded the contract and defendants returned the two deposits of $8,157.00 to the Terrells. If the Terrells had built in Mission Springs, they would have been the first African-Americans to build in that subdivision.
 
 
 15
 During the trial, the Terrells sought to introduce evidence of Richter-Rosin's sale of a home to white purchasers, Mr. and Mrs. Lev. The Levs purchased an "Aspen II" model home in the Woods of Orchard Lake Subdivision. An Aspen II model home is 500 square feet larger than the Aspen I model. The Terrells claimed that the Levs received a much better package than they had received and that defendants were more accommodating to the Levs' demands. The trial court excluded some evidence relating to this transaction, concluding that the two transactions were "not sufficiently similar to be relevant." (Transcript Excerpts of Trial Proceedings held before the Honorable Barbara K. Hackett, Feb. 2, 1994, p. 408) ("TP").
 
 
 16
 The district court, over the Terrells' objections, allowed two African-American purchasers, Mr. Marlon Newton and Mr. Bernard Davis, to testify. Both Newton and Davis purchased homes in the Woodland Ridge Subdivision. Woodland Ridge is in a different school district than Woods of Orchard Lake and Mission Springs.[3] They testified that Yashinsky was fair, helpful, professional, and pleasant throughout the negotiation process.
 
 
 17
 At the conclusion of the trial, the court gave the following instructions over the objections of the plaintiffs:
 
 
 18
 The law requires that all contracts with respect to real estate must be in writing and must be signed or initialed by all the parties.
 
 
 19
 Accordingly, in order for you to find out the defendants had committed themselves to a binding contract for the construction of a home for the plaintiffs with the garage of the dimensions the plaintiffs wanted; that is, the 33 foot inch total with 32 inside clearance, that agreement must be in writing signed or initialed by all of the parties.
 
 
 20
 If you do not find such a fully executed written agreement, the defendants had no binding obligation to construct the home with the modifications required by the plaintiffs....
 
 
 21
 Now sales to blacks or other non-discriminatory conduct is not a defense in housing discrimination cases, but may be weighed by you in determining whether, under the facts in this case, the defendants discriminated against the plaintiffs.
 
 
 22
 (TP 1110, 1112).
 
 
 23
 The jury found in favor of the defendants. The district court entered a judgment for defendants and the Terrells appealed.
 
 II.
 
 24
 The standard of review for a trial court's decision to admit or exclude evidence is an abuse of discretion. Douglass v. Eaton Corp., 956 F.2d 1339, 1344 (6th Cir.1992). Abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989) (citing Balani v. Immigration and Naturalization Service, 669 F.2d 1157 (6th Cir.1982)).
 
 
 25
 The Terrells argued that the district court abused its discretion by allowing two African-American purchasers, Mr. Newton and Mr. Davis, to testify. They contended that the testimony of these purchasers was character evidence and inadmissible under Fed.R.Evid. 404(a). Further, they maintained that the testimony of Mr. Newton and Mr. Davis was not relevant because they purchased homes in a different subdivision with a different school district. They contended that the use of such testimony would allow a "redlining defense," i.e. excluding minorities from some areas, but allowing them to live in other areas.
 
 
 26
 In response, defendants stated that Newton and Davis testified for the purpose of rebutting the inference that defendants discriminated against the Terrells. They argued that the testimony was not used as character testimony and therefore was not precluded under Fed.R.Evid. 404(a). To support their argument, defendants relied on Connecticut v. Teal which provides:
 
 
 27
 The Court has stated that a nondiscriminatory "bottom line" and an employer's good-faith efforts to achieve a nondiscriminatory work force, might in some cases assist an employer in rebutting the inference that particular action had been intentionally discriminatory: "Proof that [a] work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent when that issue is yet to be decided."
 
 
 28
 Connecticut v. Teal, 457 U.S. 440, 454, 102 S.Ct. 2525, 2534, 73 L.Ed.2d 130 (1982) (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978)).
 
 
 29
 Relying on Teal, the district court reasoned:
 
 
 30
 [E]vidence of prior non-discriminatory conduct ... may be offered to rebut the inference that a particular action has been intentionally discriminatory....
 
 
 31
 Evidence that the defendant sold homes to other black would be relevant evidence to the issue of whether they intentionally discriminated against the plaintiffs. It might assist the defendants in proving their conduct was not racially motivated.
 
 
 32
 (TP 858-59). The district court admitted this proof as rebuttal testimony--not as character evidence. Under Teal, the court did not abuse its discretion by admitting this evidence.[4] Moreover, under Fed.R.Evid. 404(b), the testimony was admissible as evidence of intent.
 
 
 33
 The Terrells cited Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 552 (9th Cir.1980); Miller v. Towne Oaks East Apts., 797 F.Supp. 557, 561 (E.D.Tex.1992); Davis v. Mansards, 597 F.Supp. 334, 345 (N.D.Ind.1984); and McHaney v. Spears, 526 F.Supp. 566, 573 (W.D.Tenn.1981) for the proposition that prior nondiscriminatory conduct is not a valid defense in housing discrimination cases. We have not held that the evidence concerning defendants' transactions with other African-Americans was used as part of defendants' defense. Rather, the testimony of Mr. Newton and Mr. Davis was used as proof of defendants' intent and motive. The district court made this clear in its instructions to the jury. The trial court's decision to admit this evidence was not an abuse of discretion and we will not disturb its ruling.
 
 III.
 
 34
 The Terrells further maintained that the trial court abused its discretion by refusing to admit certain evidence concerning defendants' sale of a home to white purchasers, Mr. and Mrs. Lev. Specifically, the Terrells argued that the district court erroneously excluded evidence concerning the price of the Levs' home. They contended that this evidence would have demonstrated that the Terrells paid more per square foot than the Levs. The Terrells contracted to build an Aspen I model home in Mission Springs while the Levs contracted to build an Aspen II model home in Woods of Orchard Lake. The Terrells wanted to compare the price of the Levs' home to the price of theirs to show that the Levs' price per square foot offset the more expensive lot in the Woods of Orchard Lake Subdivision. In other words, the Terrells sought to demonstrate that defendants were giving better prices/packages to white purchasers.
 
 
 35
 To show that the price of the Levs' home was admissible, the Terrells relied on Hobson v. George Humphreys, Inc., 563 F.Supp. 344, 350 (W.D.Tenn.1982) and Green v. Century 21, 740 F.2d 460, 462 (6th Cir.1984). However, these cases are inapplicable. In Hobson, the court allowed the purchase price of a condominium into evidence. Unlike the facts in the present suit, both white and black purchasers were negotiating over the same condominium. Here, the Terrells and Levs had contracted for different model homes in different subdivisions. Similarly, Green does not support the Terrells' argument. As in Hobson, the parties in Green were negotiating over the same piece of realty.
 
 
 36
 In deciding to exclude evidence concerning pricing and other details of the Lev transaction, the court stated that the "critical issue" was whether the Lev sale was "sufficiently similar to be relevant." (TP 408). The court found that the two homes were different models. It further stated that while Missions Springs was 75% developed, the Levs were the first purchasers in the Woods of Orchard Lake. Moreover, the markets in which the Levs and Terrells purchased their homes were different. With these factors in mind, the court held that the Lev transaction was "not sufficiently similar to be relevant." (TP 408). This was not an abuse of discretion.
 
 IV.
 
 37
 The Terrells contended that the district court committed reversible error by giving the following instruction:
 
 
 38
 Now sales to blacks or other non-discriminatory conduct is not a defense in housing discrimination cases, but may be weighed by you in determining whether, under the facts in this case, the defendants discriminated against the plaintiffs.
 
 
 39
 (TP 1112). They maintained that the instruction was erroneous because it allowed the jury to rely on erroneously admitted character evidence. They contended that a different result would have occurred without these instructions.
 
 
 40
 Jury instructions are reviewed "as a whole in order to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury in reaching its decision." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987) (citing Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181 (6th Cir.1983)). A judgment can be reversed "if the instructions, viewed as a whole, were confusing, misleading, and prejudicial." Id. (citing DSG Corp. v. Anderson, 754 F.2d 678, 679 (6th Cir.1985)).
 
 
 41
 The trial court allowed the testimony of Davis and Newton into evidence to rebut the inference that defendants discriminated against the Terrells. The district court noted that the instruction was "carefully phrased" so that the jury "would understand that it was not a defense." (Transcript Excerpts of Trial Proceedings held before the Honorable Barbara K. Hackett, Feb. 9, 1994, p. 4) ("TE"). Moreover, the instructions as a whole were not "confusing, misleading, and prejudicial." The trial court explained that the jury should "not single out one instruction alone as stating the law, but consider these instructions as a whole." (TP 1100). The court then effectively instructed the jury what constitutes discrimination under the Fair Housing Act. Looking at the instructions as a whole, the district court did not commit reversible error with respect to this instruction.
 
 
 42
 The Terrells also objected to the following instruction:
 
 
 43
 The law requires that all contracts with respect to real estate must be in writing and must be signed or initialed by all the parties.
 
 
 44
 Accordingly, in order for you to find out the defendants had committed themselves to a binding contract for the construction of a home for the plaintiffs with the garage of the dimensions the plaintiffs wanted; that is, the 33 foot inch total with 32 inside clearance, that agreement must be in writing signed or initialed by all of the parties.
 
 
 45
 If you do not find such a fully executed written agreement, the defendants had no binding obligation to construct the home with the modifications required by the plaintiffs.
 
 
 46
 (TP 1110).
 
 
 47
 The Terrells, citing Secretary, U.S. Dept. of Housing and Urban Dev., on Behalf of Herron v. Blackwell, 908 F.2d 864 (11th Cir.1990), argued that the trial court should not have instructed the jury on the statute of frauds. In Blackwell, the Eleventh Circuit held that the "Fair Housing Act's prohibitions against ... discriminatory refusals to sell or negotiate, apply regardless of whether a valid contract existed." Blackwell, 908 at 872 (citing 42 U.S.C.A. § 3604(a) (West Supp.1990)).
 
 
 48
 Again, viewing the instructions as a whole, the district court did not commit reversible error by giving these instructions. The district court stated that "because the contract was repeatedly referenced both in proofs and argument," the court thought "it was appropriate that the jury be advised as to what is the legal binding construction contract." (TE 5). After instructing the jury on the statute of frauds, the trial court explicitly outlined what type of conduct violates the Fair Housing Act. We agree with the district court that the instruction in "no way limited" what constitutes a violation of the Fair Housing Act. (TE 5).
 
 
 49
 The instruction pertaining to the statute of frauds was not "confusing," "misleading," or "prejudicial." Rather, the jury needed to know whether the parties had entered into a legally binding contract to modify the dimensions of the garage. As demonstrated by the record, a factual question existed as to whether the parties agreed to extend the garage or whether the Terrells unilaterally modified the contract. In the one instance, the motivation of defendants not to build an enlarged garage could have been the fact that they had not contracted to do so. On the other hand, if there had been a binding contract, then the failure of the defendants to perform their contractual obligation may have indicated a racial motivation. Racial discrimination can be found where there is no legal contractual obligation. However, in a case such as this, the jury needed to understand the legal obligations of the parties in order to determine what motivated the defendants.
 
 V.
 
 50
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [2]
 In contrast, Jim Dafoe, Richter-Rosin's building superintendent, testified that he presented several options to the Terrells, including building a home on another lot. He stated that all of these options were rejected by the Terrells
 
 
 [3]
 Woods of Orchard Lake and Mission Springs are both part of the West Bloomfield school system. The Woodland Ridge Subdivision is part of the Walled Lake school system
 
 
 [4]
 The Terrells cited the following cases for the proposition that character evidence is not admissible in the present suit: Continental Cas. Co. v. Howard, 775 F.2d 876, 878, 879 n. 1 (7th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); McCluney v. Jos. Schlitz Brewing Co., 728 F.2d 924, 926, 929 (7th Cir.1984); Ginter v. Northwestern Mut. Life Ins. Co., 576 F.Supp. 627 (E.D.Ky.1984); Priest v. Rotary, 98 F.R.D. 755, 756-77, 78 (D.Cal.1983) and United States v. Hedgcorth, 873 F.2d 1307, 1310, 1313 (9th Cir.1989), cert. denied, 493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989). The court agrees that character evidence is inadmissible. Fed.R.Evid. 404(a). However, the district court did not allow this testimony into proof as character evidence